SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## The Palisades at Fort Lee Condominium Association, Inc. v. 100 Old Palisade, LLC
### (A-101/102/103/104-15) (077249)

**Argued April 25, 2017 -- Decided September 14, 2017**

**ALBIN, J., writing for the Court.**

Plaintiff, The Palisades at Fort Lee Condominium Association, Inc., filed lawsuits alleging that defendants, the general contractor and three subcontractors, defectively constructed a building complex now under the Condominium Association's control. The issue is whether plaintiff filed the lawsuits before the expiration of the statute of limitations.

In December 1999, Palisades A/V Acquisitions Co., LLC retained AJD Construction Co., Inc. to serve as the general contractor on the project. AJD then hired various subcontractors, including Forsa Construction, Inc., Benfatto Masonry, Inc., and Luxury Floors, Inc. The chief architect on the project certified that The Palisades was "substantially complete" as of May 1, 2002. For the next two years, A/V rented units in The Palisades complex. In June 2004, A/V sold The Palisades to 100 Old Palisade, LLC (Old Palisade), which converted the rental apartments and units into condominiums. Old Palisade retained Ray Engineering, Inc. to inspect the common elements of the property. Ray Engineering issued a report dated October 1, 2004 (the Ray Report), stating: "Generally, the structure of the building, townhomes and parking deck appeared to be in good condition."

Old Palisade did not relinquish control of the Condominium Association to the unit owners until seventy-five percent of The Palisades' units had been sold. That occurred in July 2006. The Condominium Association then retained the Falcon Group to inspect The Palisades' common elements. The Falcon Group issued a report on June 13, 2007 (the Falcon Report), detailing construction-related defects.

Based on the Falcon Report, the Condominium Association filed a series of complaints in the Law Division that generally allege that defendants breached express and implied warranties of good workmanship, habitability, and merchantability and performed their duties negligently. Defendants moved for summary judgment, alleging that plaintiff filed its claims beyond the six-year statute of limitations, N.J.S.A. 2A:14-1.

The trial court granted defendants' motions and dismissed plaintiff's complaints as time-barred. The court found that the statute of limitations began to run upon substantial completion of The Palisades—May 1, 2002. In the trial court's view of the discovery rule, the Condominium Association had sufficient time within the six-year limitations period to bring its claims against defendants.

A panel of the Appellate Division rejected the trial court's conception of how the discovery rule operates in construction-defect cases. According to the panel, the "causes of action against defendant contractors did not accrue until June 13, 2007, when the unit-owner-controlled Board received Falcon's report." The panel concluded that plaintiff filed its complaints against defendants within the six-year period, which commenced on June 13, 2007.

The Court granted defendants' petitions for certification. 227 N.J. 154 (2016); 227 N.J. 151 (2016); 227 N.J. 151 (2016); 227 N.J. 145 (2016).

**HELD**: A construction-defect cause of action accrues at the time that the building's original or subsequent owners first knew or, through the exercise of reasonable diligence, should have known of the basis for a claim. From that point, the plaintiff has six years to file a claim. A subsequent owner stands in no better position than a prior owner in calculating the limitations period. If a prior owner knew or reasonably should have known of a basis for a construction-defect action, the limitations period began at that point. Here, the Court cannot determine when the accrual clock commenced for each defendant based on the record before it and accordingly remands to the trial court.

1.  N.J.S.A. 2A:14-1 provides that "[e]very action at law for . . . any tortious injury to real . . . property . . . shall be commenced within 6 years next after the cause of any such action shall have accrued." In construing accrual statutes, the Court has eschewed "a rigid and automatic adherence to a strict rule of law" that would produce unjust results. Lopez v. Swyer, 62 N.J. 267, 273-74 (1973). Under the discovery rule, "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Id. at 272. (pp. 17-20)

2.  In Caravaggio v. D'Agostini, 166 N.J. 237, 246, 248 (2001), the Court gave the plaintiff the benefit of the full two-year limitations period from the date of accrual, even though she had over a year-and-one-half remaining on the statute of limitations if the starting date were fixed at the time of the allegedly negligent operation. Russo Farms v. Vineland Board of Education, 144 N.J. 84, 115 (1996), stands for the proposition that in a construction-defect case, the date on which an architect certifies to the owner that the structure is substantially complete typically will start the running of the six-year property-tort statute of limitations, N.J.S.A. 2A:14-1, unless, despite the exercise of reasonable diligence, the plaintiff is unaware of an actionable claim. Importantly, the Court in Russo Farms gave the plaintiffs the benefit of the full six-year limitations period, notwithstanding that the plaintiffs would have had four years to file their claims if the clock began at the time of substantial completion. Russo Farms and Caravaggio applied the same discovery-rule template to different accrual statutes. The Court therefore rejects defendants' argument that, so long as plaintiff discovered the basis for an actionable claim within six years from the date of substantial completion, plaintiff had to file within the time remaining in the limitations period. (pp. 20-27)

3.  The Court also rejects the approach taken by the Appellate Division—that the six-year statute of limitations could not accrue before plaintiff gained full control of the Condominium Association. The statute-of-limitations clock is not reset every time property changes hands. However, if the original owner was unaware of an actionable claim, despite the exercise of reasonable diligence, then the accrual clock begins when a subsequent owner knew or reasonably should have known of the existence of the claim. A cause of action, for purposes of N.J.S.A. 2A:14-1, accrues when someone in the chain of ownership first knows or reasonably should know of an actionable claim against an identifiable party. A condominium association is not exempted from this long-standing rule. (pp. 27-30)

4.  Based on the record, the Court cannot perform the accrual calculation because it requires findings of fact to determine when A/V Acquisitions, Old Palisade, or the Condominium Association—all entities in the chain of ownership—first knew or, through the exercise of reasonable diligence, should have known of a cause of action against each defendant. Whether the accrual clock began when the Ray Report or the Falcon Report issued or at some time before, after, or in between requires a detailed inquiry. To answer those questions, the trial court must conduct a Lopez hearing and examine the documentary evidence and deposition transcripts presented by the parties and, in its discretion, take testimony from relevant witnesses. (pp. 30-32)

5.  The Legislature enacted the statute of repose in construction-defect cases, N.J.S.A. 2A:14-1.1(a), to insulate construction professionals from indefinite liability through operation of the discovery rule. The ten-year repose statute begins at the date of a project's substantial completion and sets the outer limit for the filing of a construction-defect claim. The complaints against all defendants were filed within this ten-year period. Therefore, N.J.S.A. 2A:14-1.1(a) does not stand as a bar to plaintiff's claims. (pp. 32-34)

6.  In summary, the date that a structure is deemed substantially complete oftentimes is when a cause of action accrues. But many construction defects will not be obvious immediately. In such instances, a cause of action does not accrue until the plaintiff knows or, through the exercise of reasonable diligence, should know of a cause of action against an identifiable defendant. A plaintiff who is a successor in ownership takes the property with no greater rights than an earlier owner. If the earlier owner knew or should have known of a cause of action against an identifiable defendant, the accrual clock starts then. The determination of when a claim accrued ordinarily should be made at a Lopez hearing. At the hearing, the plaintiff will bear the burden of proving that the claim accrued at a time after a project's substantial completion. (pp. 34-35)

The judgment of the Appellate Division is **REVERSED**. The matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

THE PALISADES AT FORT LEE
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff-Respondent,

        v.

100 OLD PALISADE, LLC, CRESCENT
HEIGHTS OF AMERICA, INC., CRESCENT
HEIGHTS ACQUISITIONS, LLC, 100 OLD
PALISADE HOLDINGS, LLC, 100 OLD
PALISADE HOLDINGS II, LLC, 100 OLD
PALISADE HOLDINGS III, LLC, EREZ
BASHARI, PEIRU WEN, LENNY WARSHAW,
NISSIM LANCIANO, SHARON
CHRISTENBURY, JOSEPH ZDON, PABLO
DE ALMAGRO, EPHRAIM BASHARI, SONNY
KAHN, individually and as Trustee
of the SK Business Trust, SK
BUSINESS TRUST, RUSSELL W. GALBUT,
individually and as Trustee of the
RF Business Trust, RF BUSINESS
TRUST, BRUCE A. MENIN,
individually and as Trustee of the
MENIN 1998 FAMILY TRUST, MENIN
1998 FAMILY TRUST, F&G MECHANICAL
CORP., MANNIX EXTERIOR WALL
SYSTEMS, INC., SOUTH SHORE
CONTRACTING, INC., PATWOOD
CONTRACTING CO., INC., d/b/a
PATWOOD ROOFING, MTA CORP., MAARV
WATERPROOFING, B&B IRON WORKS,
INC., RAY ENGINEERING, INC.,
STEVEN W. RAY, P.E., METRO GLASS,
INC., and ROMITCH CO.,

    Defendants-Appellants,

        and

AJD CONSTRUCTION CO., INC., LUXURY

1

FLOORS, INC., BENFATTO MASONRY, INC., and FORSA CONSTRUCTION, INC.,

      Defendants-Appellants.

---

100 OLD PALISADE, LLC, CRESCENT HEIGHTS OF AMERICA, INC., CRESCENT HEIGHTS ACQUISITIONS, LLC, 100 OLD PALISADE HOLDINGS, LLC, 100 OLD PALISADE HOLDINGS II, LLC, 100 OLD PALISADE HOLDINGS III, LLC, EREZ BASHARI, PEIRU WEN, LENNY WARSHAW, NISSIM LANCIANO, SHARON CHRISTENBURY, JOSEPH ZDON, PABLO DE ALMAGRO, EPHRAIM BASHARI, SONNY KAHN, individually and as Trustee of the SK Business Trust, SK BUSINESS TRUST, RUSSELL W. GALBUT, individually and as Trustee of the RF Business Trust, RF BUSINESS TRUST, BRUCE A. MENIN, individually and as Trustee of the MENIN 1998 FAMILY TRUST, MENIN 1998 FAMILY TRUST,

      Defendants/Third-Party
      Plaintiffs,

          v.

APPLIED PROPERTY MANAGEMENT CO., INC., a/k/a APPLIED DEVELOPMENT COMPANY, IRONSTATE DEVELOPMENT COMPANY, a/k/a IRONSTATE DEVELOPMENT, LLC, IRONSTATE HOLDINGS, LLC, COSTAS KONDYLIS & ASSOCIATES, P.C., COSTAS KONDYLIS & PARTNERS, LLP, CONSTANTINE A. KONDYLIS, a/k/a COSTAS KONDYLIS, GOLDSTEIN ASSOCIATES CONSULTING ENGINEERS, P.C.,

      Defendants/Third-Party
      Defendants.

---

AJD CONSTRUCTION CO., INC.,

    Third-Party Plaintiff,

       v.

PATWOOD CONTRACTING CO., INC., d/b/a PATWOOD ROOFING, MTA CORP., MAARV WATERPROOFING, INC., BENFATTO CONSTRUCTION CORP., B&B IRON WORKS, INC.,

    Third-Party Defendants.

SOUTHSHORE CONTRACTING, INC.,

    Third-Party Plaintiff,

       v.

ARQ PAINTING & CONTRACTING, INC.,

    Third-Party Defendant.

APPLIED PROPERTY MANAGEMENT CO., INC., THE PALISADES A/V COMPANY, LLC, APPLIED PALISADES, LLC, APPLIED DEVELOPMENT COMPANY, INC., improperly pleaded as d/b/a APPLIED DEVELOPMENT COMPANY, IRONSTATE DEVELOPMENT, LLC, IRONSTATE HOLDINGS, LLC,

    Fourth-Party Plaintiffs,

       v.

WENTWORTH PROPERTY MANAGEMENT CORPORATION, WORTHMORE CONSTRUCTION & MAINTENANCE CO., INC.,

    Fourth-Party Defendants.

3

Argued April 25, 2017 – Decided September 14, 2017

On certification to the Superior Court, Appellate Division.

Eric S. Schlesinger argued the cause for appellant Forsa Construction (Golden, Rothschild, Spagnola, Lundell, Boylan & Garubo, attorneys; Eric S. Schlesinger and Russ M. Patane, of counsel and on the briefs, and Francesca E. Cheli, on the briefs).

Stephen C. Cahir argued the cause for appellant Luxury Floors, Inc. (Law Office of William E. Staehle, attorneys; Stephen C. Cahir, on the brief).

Mark D. Shifton argued the cause for appellant Benfatto Construction Corp. (Seiger Gfeller Laurie, attorneys; Mark D. Shifton of counsel and on the briefs, and Chester D. Ostrowski, on the brief).

John H. Osorio argued the cause for appellant AJD Construction Co., Inc. (Marshall Dennehey Warner Coleman & Goggin, attorneys; John H. Osorio, Walter F. Kawalec, III, and Pauline E. Tutelo on the briefs).

Raymond A. Garcia of the Connecticut bar, admitted pro hac vice, argued the cause for respondent (Lum, Drasco & Positan and Garcia & Milas, attorneys; Paul A. Sandars, III, of counsel and on the brief, and Raymond A. Garcia, and Nicole Liguori Micklich, of the Connecticut and Rhode Island bars, on the brief).

Gene Markin argued the cause for amicus curiae Community Association Institute (Stark & Stark, attorneys; Gene Markin and John Randy Sawyer, on the brief).

4

Michael S. Zicherman submitted a brief on behalf of amicus curiae Associated Construction Contractors of New Jersey (Peckar & Abramson, attorneys; Charles F. Kenny, of counsel, and Michael S. Zicherman, of counsel and on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

Plaintiff, The Palisades at Fort Lee Condominium Association, Inc., filed lawsuits alleging that defendants, the general contractor and three subcontractors, defectively constructed a building complex that is now under the Condominium Association's control. The issue before us is whether plaintiff filed the lawsuits before the expiration of the statute of limitations.

N.J.S.A. 2A:14-1 is a statute of limitations generally governing tort-based property-damage claims. Under that statute, a construction-defect action must be commenced within six years "after the cause of any such action shall have accrued." Ibid. The heart of the controversy in this case is the point at which plaintiff's causes of action "accrued."

The trial court determined that the six-year statute of limitations began to run in May 2002, when the building was substantially complete. Applying its conception of the discovery rule, the court found that the building's owners knew or reasonably should have known of any defects within the six-year period and therefore should have filed the lawsuits by May

5

2008. Because the Condominium Association did not initiate the first lawsuit until after that date, the court dismissed the actions against all defendants.

The Appellate Division reversed, concluding that the Condominium Association's claims accrued in June 2007, when it undertook full unit-owner control of the building and became "reasonably aware" of actionable claims of construction defects based on the report of a construction expert it had retained. The Condominium Association filed all complaints against defendants within six years of that date.

We now hold that neither the trial court nor the Appellate Division applied the correct legal standard for determining when the construction-defect actions accrued pursuant to N.J.S.A. 2A:14-1. Although N.J.S.A. 2A:14-1's six-year statute of limitations typically commences upon substantial completion of a structure, the discovery rule applies to the accrual of a claim under N.J.S.A. 2A:14-1. Under that rule, the limitations clock does not commence until a plaintiff is able to discover, through the exercise of reasonable diligence, the facts that form the basis for an actionable claim against an identifiable defendant. Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001).

Over time, as in this case, ownership of a building may change hands. A construction-defect lawsuit must be filed within six years from the time that the building's original or

subsequent owners <u>first</u> knew or, through the exercise of reasonable diligence, should have known of the basis for a cause of action. A subsequent owner stands in no better position than a prior owner in calculating the limitations period. If a prior owner knew or reasonably should have known of a basis for a construction-defect action, the limitations period began at that point.

In light of the legal paradigm just articulated, we cannot determine when the accrual clock commenced for each defendant based on the record before us. Accordingly, we remand to the trial court to conduct a <u>Lopez</u>[1] hearing and to make findings of fact to settle that issue.

I.

A.

The Palisades is a residential building complex located in Fort Lee, New Jersey. The centerpiece of The Palisades is a forty-one story high-rise consisting of a thirty-story residential tower set atop an eleven-story parking garage. Within The Palisades complex are mid-rise apartments, townhomes, and various recreational facilities.

Palisades A/V Acquisitions Co., LLC (A/V Acquisitions) developed The Palisades project on property that it had

---

[1] <u>Lopez v. Swyer</u>, 62 <u>N.J.</u> 267 (1973).

acquired. In December 1999, A/V Acquisitions retained AJD Construction Co., Inc. (AJD) to serve as the general contractor on the project. AJD then hired various subcontractors, including Forsa Construction, Inc., Benfatto Masonry, Inc., and Luxury Floors, Inc., to perform specialized work on the project. Forsa Construction built the high-rise tower and garage, Benfatto Masonry constructed the exterior walls, and Luxury Floors installed flooring throughout the common areas. The chief architect on the project certified that The Palisades was "substantially complete" as of May 1, 2002, the date on which certificates of occupancy had been issued for various floors and units.

For the next two years, A/V Acquisitions rented apartments and units in The Palisades complex. In June 2004, A/V Acquisitions sold The Palisades to 100 Old Palisade, LLC (Old Palisade),[2] which converted the rental apartments and units into condominiums pursuant to the Condominium Act, N.J.S.A. 46:8B-1 to -38. As part of the condominium conversion process, Old Palisade retained Ray Engineering, Inc. to inspect the common elements of the property. Ray Engineering issued a report dated

---

[2] The parties refer to Old Palisade, Crescent Heights Acquisitions, Inc., and Crescent Heights of America, Inc. interchangeably. These companies appear to be part of the same corporate family. For the sake of consistency and clarity, we use only the name Old Palisade.

October 1, 2004 (the Ray Report), stating: "Generally, the structure of the building, townhomes and parking deck appeared to be in good condition." The report noted the presence of "some spalling of concrete" and "some sporadic cracking of the concrete" in the parking deck. The spalling and cracking, however, did "not appear to be a structural concern at the present time."

In converting The Palisades to a condominium form of ownership, Old Palisade attached the Ray Report to its public offering statement on January 27, 2005, and to the master deed. According to the master deed, the condominium association would be responsible for the administration and maintenance of the building's common areas and facilities.

Although The Palisades at Fort Lee Condominium Association, Inc. (the Condominium Association or plaintiff) was incorporated on February 23, 2005, Old Palisade did not relinquish control of the Condominium Association until seventy-five percent of The Palisades' units had been sold. See N.J.S.A. 46:8B-12.1(a) ("Unit owners . . . shall be entitled to elect all of the members of the governing board . . . upon the conveyance of 75% of the units in a condominium."). That occurred in July 2006. At that point, the unit owners took full control of the Condominium Association.

The unit-owner-controlled Condominium Association then

retained the Falcon Group, an engineering and architectural services firm, to inspect The Palisades' common elements for any construction defects. The Falcon Group issued a report on June 13, 2007 (the Falcon Report), detailing construction-related defects in the building's exterior walls, roofing, concrete flooring, and plumbing, and in other areas, such as the parking garage and landscaping.

B.

Based on the Falcon Report, the Condominium Association filed a series of complaints in the Superior Court, Law Division, including one against defendants AJD and Luxury Floors on March 12, 2009, one against Benfatto Masonry on April 16, 2009, and another against Forsa Construction on September 7, 2010.[3] The complaints generally allege that defendants breached express and implied warranties of good workmanship, habitability, and merchantability and performed their duties negligently.

At the completion of discovery, AJD, Luxury, Benfatto, and Forsa (collectively defendants) moved for summary judgment, alleging that plaintiff filed its claims beyond the six-year statute of limitations, N.J.S.A. 2A:14-1.

---

[3] Plaintiff filed an initial complaint followed by nine amended complaints against the parties whose names appear on the caption of this case. The plaintiff's actions against all parties, other than defendants, have been resolved.

10

The trial court granted defendants' motions and dismissed plaintiff's complaints as time-barred.  The court found that the six-year statute of limitations governing construction-defect claims, N.J.S.A. 2A:14-1, began to run upon substantial completion of The Palisades complex -- May 1, 2002.  The court recognized that, under the discovery rule, "a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim," quoting Belmont Condominium Ass'n, Inc. v. Geiberl, 432 N.J. Super. 52, 83 (App. Div.), certif. denied, 216 N.J. 366 (2013).  The court, however, held that so long as "the plaintiff has sufficient knowledge of its claim and there remains a reasonable time under the applicable limitations period to commence a cause of action, the action will be time barred if not filed within that remaining time," citing Torcon, Inc. v. Alexian Brothers Hospital, 205 N.J. Super. 428, 437 (Ch. Div. 1985).

The court noted that the October 2004 Ray Report, appended to Old Palisade's public offering statement, "outlined a number of [construction] deficiencies" and that, "[e]ven assuming that the [Condominium] Association was not reasonably aware of the defects until [the issuance of the Falcon Report in June 2007],

there was still an entire year left in the statute of limitations for the Association to bring a claim." In short, in the trial court's view of the discovery rule, the Condominium Association had sufficient time within the six-year limitations period to bring its claims against defendants.

The court also rejected plaintiff's argument that its causes of action did not accrue until the formation of the Condominium Association. The court concluded that defendants "could not have reasonably anticipated that they would be liable in perpetuity . . . for alleged construction defects that were previously known or should have been known" to The Palisades' prior owners.

The court denied plaintiff's motion for reconsideration.

D.

In an unpublished per curiam opinion, a panel of the Appellate Division reversed the trial court's order dismissing plaintiff's claims on statute-of-limitations grounds. The panel rejected the trial court's conception of how the discovery rule operates in construction-defect cases, asserting that "by its plain terms, [N.J.S.A. 2A:14-1] indicates that a claimant would have the benefit of the full limitations period to file its complaint after the cause of action has accrued." The panel found that "it would be unreasonable for the statute of limitations to run on the claim of a condominium association,

12

unless a unit owner, or group of unit owners, took on that responsibility." The panel therefore determined that the Condominium Association's "causes of action did not accrue until the unit owners took full control of the Association's governing Board, and the Board had sufficient facts upon which to assert actionable claims against defendant contractors."

According to the panel, the Condominium Association did not have sufficient facts to assert actionable claims against defendants until its receipt of the Falcon Report, which identified, in greater detail than the Ray Report, construction defects in The Palisades. Therefore, the "causes of action against defendant contractors did not accrue until June 13, 2007, when the unit-owner-controlled Board received Falcon's report." The panel concluded that plaintiff filed its complaints against defendants within the six-year limitations period, which commenced on June 13, 2007.

Last, the panel dismissed defendants' assertions that such an outcome would render contractors "forever liable." It observed that N.J.S.A. 2A:14-1.1(a), the statute of repose, limits to a ten-year period, starting at a project's substantial completion, the liability of contractors and therefore restricts "an expansive application of the discovery rule."

This Court granted defendants' petitions for certification. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 227

13

N.J. 154 (2016); Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 227 N.J. 151 (2016); Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 227 N.J. 151 (2016); Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 227 N.J. 145 (2016). This Court also granted the motions of Associated Construction Contractors and Community Association Institute to participate as amici curiae.

## II.

### A.

Defendants, collectively or individually, submit that the Appellate Division erred in concluding that the statute of limitations did not begin to run until after The Palisades' unit owners took full control of the Condominium Association. Defendants assert that, for purposes of determining the accrual date of a construction-defect case, the purchaser of a building stands in the shoes of the prior building owners. Under defendants' construct, the original owner, A/V Acquisitions, which knew or reasonably should have known of alleged defects by the time of the Ray Report, conveyed the rights it possessed -- and no greater rights -- to subsequent owners in the chain of ownership. Defendants thus argue that the Condominium Association is not entitled to a reset of the statute of limitations based on when it took ownership responsibility of The Palisades.

14

Defendants also agree with the trial court that the discovery rule -- as a rule of equity -- does not apply if a plaintiff knows or has reason to know of a cause of action against an identifiable defendant within the limitations period. From this perspective, the discovery rule is not applicable "until after the normal period of limitations runs." Thus, defendants argue that plaintiff had a year left to file its claims after receipt of the Falcon Report and no excuse for not taking action until almost two years afterwards.

Last, defendants contend that the Appellate Division wrongly held that the ten-year statute of repose, N.J.S.A. 2A:14-1.1(a), sets the outer limit for all construction-defect actions. Defendants point out that the repose statute only bars construction claims "arising out of the defective and unsafe condition of an improvement to real property." N.J.S.A. 2A:14-1.1(a) (emphasis added). Defendants reason that under the Appellate Division's construct, architects and contractors have limitless liability for construction defects that do not raise safety concerns.

Amicus curiae Associated Construction Contractors advances similar arguments.

B.

Plaintiff submits that the statute of limitations did not begin to run on the Condominium Association's claims until the

15

unit owners took control of the governing board.  Plaintiff insists that the prior owners' knowledge of construction defects on the property, or their failure to exercise reasonable diligence in discovering those defects, did not trigger the limitations period against the Condominium Association. Plaintiff contends that it did not have sufficient knowledge to assert adequate claims against defendants until June 13, 2007 -- the day it received the Falcon Report, which identified construction defects not mentioned in the earlier Ray Report. From that point, plaintiff reasons, its causes of action accrued and the six-year limitations period commenced.  Last, plaintiff asserts that the ten-year statute of repose protects contractors from potential liability in perpetuity.

Amicus curiae Community Association Institute echoes many of these arguments.

III.

Our primary task is to determine whether plaintiff filed its construction-defect claims within the six-year limitations period allowed by N.J.S.A. 2A:14-1.  To resolve that issue, we must decide when plaintiff's causes of action "accrued" for purposes of N.J.S.A. 2A:14-1.  Accrual of an action is the trigger that commences the statute-of-limitations clock.

We are not writing on a blank slate in construing the statutory term "accrued."  Although we have developed a body of

16

jurisprudence on this subject, the differing viewpoints of the Appellate Division, trial court, and parties illustrate that the legal principles set forth in our jurisprudence are still susceptible to varying interpretations.

Determining the meaning of the statutory word "accrued" as well as the metes and bounds of the discovery rule are matters of law. We review issues of law de novo, according no deference to the interpretative analysis of either the Appellate Division or trial court, except as we are persuaded by the reasoning of those courts. Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009); see also Manalapan Realty, L.P. v. Twp. Comm. of Township of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

A.

We begin our analysis with the statute of limitations that generally governs tort-based property-damage claims, including plaintiff's construction-defect lawsuits. N.J.S.A. 2A:14-1 provides:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels . . . shall be commenced within 6 years next after the cause of any such action shall have accrued.

17

[(emphasis added).]

The Legislature did not define "accrued" in N.J.S.A. 2A:14-1 or other similar statutes of limitations and therefore left to the judiciary the role of infusing this term with meaning. See Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968).[4]

Statutes of limitations, by their nature, are intended to compel plaintiffs to file their lawsuits within a prescribed time to allow defendants a fair opportunity to respond and safeguard their interests. Gantes v. Kason Corp., 145 N.J. 478, 486 (1996). Such statutes encourage diligence and penalize dilatoriness by allowing the dismissal of stale claims. Ibid. In construing accrual statutes, however, we have eschewed "a rigid and automatic adherence to a strict rule of law" that would produce unjust results. Lopez, supra, 62 N.J. at 273-74. That is because, in the realm of tort law, a plaintiff may not realize immediately that he suffered a personal injury or property damage or know that he has a cause of action against an identifiable wrongdoer. See Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 192 (2012); see also Beauchamp v. Amedio, 164 N.J.

---

[4] The personal-injury statute of limitations is also an accrual statute and has been the subject of repeated judicial interpretation. N.J.S.A. 2A:14-2(a) provides: "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person . . . shall be commenced within two years next after the cause of any such action shall have accrued." (emphasis added).

111, 117 (2000); Baird v. Am. Med. Optics, 155 N.J. 54, 65-66 (1998).

Equitable principles -- principles that comport with notions of fundamental fairness -- govern the accrual date of a legal claim. See Caravaggio, supra, 166 N.J. at 245. The trigger point for the start of a cause of action under an accrual statute is when "the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Id. at 246. This simple elucidation of our law has been the product of decades of evolving jurisprudence.

More than fifty years ago, in Fernandi v. Strully, we recognized that equitable principles applied to the accrual of a personal-injury claim governed by a two-year statute of limitations. 35 N.J. 434, 439 (1961). In that case, based on an x-ray examination, the plaintiff discovered that the physicians, who had operated on her three years earlier, had left a wing nut in her abdomen during surgery. Id. at 435-36. The plaintiff filed her negligence claim one year later -- four years after the operation. Id. at 436. We held that because the plaintiff's "cause of action was unknown and unknowable to her" until discovery of the wing nut on the x-ray, her claim did not accrue until that point. Id. at 451.

In Lopez, supra, we called the equitable approach taken in

*Fernandi* the "discovery rule." 62 N.J. at 273. Under that rule, "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Id. at 272. The qualifier to the discovery rule was how to determine the "appropriate case" for its application. The Court listed a number of non-exhaustive factors, such as "the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, [and] whether the delay may be said to have peculiarly or unusually prejudiced the defendant." Id. at 276.

Later, in Fox v. Passaic General Hospital, the Court refined Lopez's language qualifying the discovery rule, stating that the "rule should be as simple and uncomplicated as is consistent with the achievement of justice." 71 N.J. 122, 125 (1976). The Court expressed concerns about the difficulties that trial judges would face in deciding the "reasonableness" of time left for a plaintiff to file a claim when the discovery occurred within the two-year limitations period. Id. at 126. To eliminate uncertainty in calculating the limitations period, the Court maintained that "the plaintiff should normally have the benefit of the legislative policy determination that he may

20

institute his action at any time within two years from the date of such accrual." Ibid. (emphasis added).  The rationale for that approach "is that the cause of action does not 'accrue' until discovery." Id. at 127.  Thus, Fox made clear that the accrual clock generally does not begin to tick until, through the exercise of reasonable diligence, the plaintiff discovers -- whether inside or outside the typical two-year limitations period -- the basis for an actionable claim.  See id. at 126-27.

Having set forth that straightforward standard, the Fox Court added some equitable qualifiers:

> [I]f a defendant can establish (a) that the lapse of time between the expiration of two years after the actionable event and the date of institution of the suit "peculiarly or unusually prejudiced the defendant[,]" and (b) that there was a reasonable time for plaintiff to institute his action between discovery of the cause of action and expiration of said two years after the actionable event, the cause of action may be dismissed on limitations grounds.
>
> [Id. at 128 (citation omitted).]

Those added conditions, like the earlier qualifying language in Lopez, apparently confounded Fox's goal of adopting "a simple and uncomplicated" formulation of when a cause of action accrued.  See id. at 125.  Fox's foremost principle -- that the plaintiff is normally entitled to the full limitations period upon discovery of an actionable claim, id. at 126 -- becomes a common theme in our jurisprudence, see, e.g., Caravaggio, supra,

21

166 N.J. at 250 (quoting Moran v. Napolitano, 71 N.J. 133, 134 (1976)). However, Fox's qualifying language fell into disuse by 1980 and has not been employed again in an opinion of our Court.

Twenty-five years after Fox, our discovery-rule jurisprudence was still far from a model of clarity, leading Justice Long to comment: "The discovery rule, incorporating as it does a notion of simple justice, has been anything but simple in application . . . . Decades after its enunciation, lawyers and judges are still grappling with its application." Caravaggio, supra, 166 N.J. at 240. In Caravaggio, we set out to bring greater certainty and predictability to the calculation of the limitations period under the discovery rule.

Caravaggio involved a medical-malpractice claim governed by a two-year statute of limitations. Id. at 240-41, 243. On May 23, 1993, the defendant surgeon operated on plaintiff's fractured femur, inserting a rod through it to stabilize the fracture. Id. at 240-41. Two months later, the plaintiff "felt a 'snap' in her leg," and a week afterwards, an x-ray "revealed that the rod had broken." Id. at 241. On October 21, 1993, the surgeon removed and replaced the broken rod and informed the plaintiff "that there was something wrong with the rod and that she should take it to [her] lawyer." Id. at 242. An analysis of the rod revealed that it was not defective. Id. at 243. On September 15, 1995, the plaintiff filed a medical malpractice

claim, alleging that the surgeon negligently inserted the rod. Ibid.

The Court determined that the two-year limitations period accrued on October 21, 1993, when the plaintiff had an objectively reasonable basis to know that the surgeon injured her through his alleged negligence. Id. at 250-51, 253. The Court gave the plaintiff the benefit of the full two-year limitations period from the date of accrual, even though she had over a year-and-one-half remaining on the statute of limitations if the starting date were fixed at the time of the allegedly negligent operation. See ibid. The Court did not hold that, after discovering her cause of action, the plaintiff had to file her malpractice claim within a reasonable period in the time remaining on the two-year limitation clock. See ibid.

In distilling our discovery-rule jurisprudence, the Court reached the following holding: "[W]hen a plaintiff knows of an injury, and knows that it is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against the third party until the plaintiff has evidence that reveals his or her possible complicity." Id. at 250. The Court emphasized that this rule does not require that a plaintiff have perfect knowledge to support a claim against an identifiable defendant before an action will accrue. See id. at 246. Under this

23

construct, a plaintiff's cause of action may accrue at different times against different defendants, depending on when the plaintiff knew or reasonably should have known he had an actionable claim against each defendant. Id. at 248.

Absent from the discussion in Caravaggio is any of the qualifying language in Fox, i.e., peculiar or unusual prejudice to a defendant. See Fox, supra, 71 N.J. at 128. The qualifying language in Fox created two different standards for when a cause of action accrues -- one for when discovery occurs within two years of a personal injury and another for when discovery occurs more than two years after the injury. Under the Fox framework, a court does not inquire whether a defendant was peculiarly prejudiced if the plaintiff discovered his personal-injury cause of action eight years after the injury was inflicted. The plaintiff is simply entitled to the full two-year limitations period upon discovery. Yet, under that same framework, a defendant could argue that he was peculiarly prejudiced if the plaintiff discovered his cause of action one-and-one-half years after the injury but did not file within the six months' time remaining under the two-year limitations statute.

That approach obviously lacks symmetry. In those two examples, there is no satisfactory reason why, once accrual is triggered, the limitations period is not the same two-year period.

24

*Caravaggio* provided the template for when a cause of action commences in accrual statutes of limitations:  accrual occurs when a plaintiff knows or, through the exercise of reasonable diligence, should know of the basis for a cause of action against an identifiable defendant.

B.

Our discovery-rule jurisprudence has evolved mostly in construing the personal-injury statute of limitations.  We have applied the discovery rule, however, to other similarly worded accrual statutes, including the notice requirement in the New Jersey Tort Claims Act, N.J.S.A. 59:8-8, see Elazar v. Macrietta Cleaners, Inc., ___ N.J. ___, ___ (2017) (slip op. at 11-14), and the tort-based property-damage statute of limitations, N.J.S.A. 2A:14-1, see Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 115 (1996).  Importantly, the discovery rule applies to property-tort lawsuits arising from construction defects, as illustrated in Russo Farms, supra.  See 144 N.J. at 115.

In that case, a board of education constructed a school on property located across the street from the plaintiffs' farmland.  Id. at 91-92.  Construction on the school was substantially complete on September 5, 1979.  Id. at 92-93.  Shortly after the school's completion, rainwater began to flood plaintiffs' farmland, causing soil erosion, poor crop yield, and diminution of the property's value.  Id. at 93-94.  Not until

25

1981, however, did the plaintiffs become reasonably aware that faulty construction of the school's drainage system was causing the runoff onto their property. Id. at 98-99, 115. At this point, the plaintiffs were "on notice of a potential claim" against the architect and contractor who constructed the school. Id. at 115. Applying the discovery rule, the Court calculated the six-year limitations period from the point of accrual in 1981 and determined that the plaintiffs were required to file suit by 1987. See ibid. Because the plaintiffs did not file their claims against the architect and contractor until 1990, those late claims were dismissed. Id. at 115, 119.

Russo Farms stands for the proposition that in a construction-defect case, the date on which an architect certifies to the owner that the structure is substantially complete typically will start the running of the six-year property-tort statute of limitations, N.J.S.A. 2A:14-1, unless, despite the exercise of reasonable diligence, the plaintiff is unaware of an actionable claim. See id. at 115-16. Importantly, the Court in Russo Farms gave the plaintiffs the benefit of the full six-year limitations period, notwithstanding that the plaintiffs would have had four years to file their claims if the clock began at the time of substantial completion. See id. at 115. Russo Farms and Caravaggio applied the same discovery-rule template to different accrual statutes of

26

limitations.

We therefore reject defendants' argument that, so long as plaintiff discovered the basis for an actionable claim within six years from the date of substantial completion, plaintiff had to file within the time remaining in the limitations period. Under defendants' interpretation of the discovery rule, on one hand, plaintiff had six years from substantial completion of The Palisades -- until May 1, 2008 -- to file its claims because the Falcon Report issued on June 13, 2007, which allowed plaintiff nine months to file. On the other hand, defendants apparently concede that plaintiff would have had a full six years to file if discovery of the construction defects occurred on May 2, 2008, one day after the limitations period ended. That construct yields an absurd result. Clearly, defendants are no worse off in presenting a defense if the six-year limitations period commenced on June 13, 2007, rather than on May 2, 2008.

Moreover, if the date of accrual -- the date that the plaintiff knows or reasonably should know of an actionable claim against an identifiable defendant -- signals the beginning of the limitations period, then consistency and predictability will be advanced when all parties can calculate the precise time for the filing of claims.

C.

We also reject the approach taken by the Appellate Division

27

-- and advanced by plaintiff -- that the six-year statute of limitations could not accrue before plaintiff gained full control of the Condominium Association.  An owner of a building cannot convey greater property rights to a purchaser than the owner possessed.  If the building's owner knew or reasonably should have known of construction defects at the time of the sale of the property, the purchaser takes title subject to the original owner's right -- and any limitation on that right -- to file a claim against the architect and contractors.  See O'Keeffe v. Snyder, 83 N.J. 478, 502 (1980); see also Byrne v. Autohaus on Edens, Inc., 488 F. Supp. 276, 280-81 (N.D. Ill. 1980) (noting that when owner knows or has reason to know of injury, limitations statute begins to run for all potential future plaintiffs in chain of title).  Thus, a subsequent owner will stand in the shoes of a prior owner for statute-of-limitations purposes.  See CAMSI IV v. Hunter Tech. Corp., 282 Cal. Rptr. 80, 85 (Ct. App. 1991) (noting that if owner does not file claim within statutory period, "claim will be barred for that and all subsequent owners").

For example, if the building's original owner does not file a construction-defect lawsuit within the six-year limitations period from accrual of an actionable claim, the purchaser taking title has no right to revive a lapsed claim.  In certain circumstances, the purchaser may have a claim against the seller

28

for fraudulent concealment or some other cause of action.  See, e.g., Dep't of Envt'l Prot. v. Ventron Corp., 94 N.J. 473, 503 (1983).

The statute-of-limitations clock is not reset every time property changes hands.  However, if the original owner was unaware of an actionable claim, despite the exercise of reasonable diligence, then the accrual clock begins when a subsequent owner knew or reasonably should have known of the existence of the claim.  A cause of action, for purposes of N.J.S.A. 2A:14-1, accrues when someone in the chain of ownership first knows or reasonably should know of an actionable claim against an identifiable party.  See O'Keeffe, supra, 83 N.J. at 502.

A condominium association does not enjoy a preferred status exempting it from this long-standing rule.  If the owner of an apartment building does not file a timely construction-defect lawsuit and then sells the building to a new owner, who has no right to revive the claim, a construction-defect lawsuit does not spring to life when the new owner converts the apartments into condominiums.

Here, A/V Acquisitions retained defendant AJD as the general contractor, which in turn hired the defendant subcontractors, to construct the project known as The Palisades. A/V Acquisitions then sold The Palisades to Old Palisade, which

29

converted the building's units from rental to condominium ownership. Old Palisade controlled the condominium association until seventy-five percent of the units were sold. With respect to the right to file a construction-defect lawsuit against defendants, Old Palisade took title subject to the rights of A/V Acquisitions, and the plaintiff Condominium Association took title subject to any limitation on the rights of the two predecessor owners.

We now assess how those principles apply to determining the accrual of plaintiff's claims against defendants.

D.

A/V Acquisitions arranged for the construction of The Palisades. Defendants AJD, Forsa Construction, Benfatto Masonry, and Luxury Floors worked on the construction of The Palisades, which was "substantially complete" as of May 1, 2002. Thereafter, A/V Acquisitions rented apartment units from The Palisades. In June 2004, Old Palisade purchased the property, converting the rental units into condominiums. As part of the condominium-conversion process, Old Palisade retained Ray Engineering to inspect the property. On October 1, 2004, Ray Engineering issued a report stating that the buildings and parking deck "appeared to be in good condition," although the deck had some spalling and cracking, which was not of structural concern at the time. Old Palisade attached the report to its

30

public offering statement and the master deed.

After selling seventy-five percent of the condominium units, Old Palisade relinquished control of the Condominium Association to the unit owners in July 2006. The Condominium Association then retained the Falcon Group to inspect The Palisades complex. That inspection led to a report issued on June 13, 2007, detailing defects in the exterior walls, roofing, concrete flooring, plumbing, and other areas.

The trial court determined that the accrual of the six-year limitations period under N.J.S.A. 2A:14-1 commenced on May 1, 2002, the date of substantial completion, and that the timing of the Ray and Falcon Reports allowed plaintiff sufficient time to file its claims before May 1, 2008. Because plaintiff did not file its initial and amended complaints until after that date, the court dismissed plaintiff's actions. As we have explained, the trial court erroneously calculated the accrual date.

Based on the record before us, we cannot perform that calculation because it requires findings of fact to determine when A/V Acquisitions, Old Palisade, or the Condominium Association -- all entities in the chain of ownership -- first knew or, through the exercise of reasonable diligence, should have known of a cause of action against each defendant. Whether the accrual clock began when the Ray Report or the Falcon Report issued or at some time before, after, or in between requires a

31

detailed inquiry.  To answer those questions, the trial court
must conduct a Lopez hearing and examine the documentary
evidence and deposition transcripts presented by the parties
and, in its discretion, take testimony from relevant witnesses.

E.

We cannot end our analysis without noting the distinction
between an accrual statute of limitations and a statute of
repose, which has some bearing on this case.  As discussed, an
accrual statute generally has no certain end date, given that
the trigger of the limitations period may depend on when a
plaintiff discovers the basis for his cause of action.  In
contrast, a repose statute has fixed beginning and ending dates,
thus providing certainty to defendants when their exposure to
liability concludes.  See Town of Kearny v. Brandt, 214 N.J. 76,
93 (2013); Daidone v. Buterick Bulkheading, 191 N.J. 557, 567
(2007).

The Legislature enacted the statute of repose in
construction-defect cases, N.J.S.A. 2A:14-1.1(a), to insulate
construction professionals -- such as architects, planners,
designers, builders, and contractors -- from indefinite
liability through operation of the discovery rule.  Town of
Kearny, supra, 214 N.J. at 93; see Russo Farms, supra, 144 N.J.
at 116.  N.J.S.A. 2A:14-1.1(a) provides that:

> No action . . . to recover damages for any

32

deficiency in the design, planning, surveying, supervision or construction of an improvement to real property . . . <u>shall be brought against any person performing or furnishing the . . . construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction</u>. This limitation shall serve as a bar to all such actions . . . at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

[(emphasis added).]

The ten-year repose statute begins at the date of a project's substantial completion. <u>Town of Kearny</u>, <u>supra</u>, 214 <u>N.J.</u> at 93-94; <u>Russo Farms</u>, <u>supra</u>, 144 <u>N.J.</u> at 117-18. The statute of repose sets the outer limit for the filing of a construction-defect claim. For example, if for purposes of the property-damage statute of limitations, <u>N.J.S.A.</u> 2A:14-1, a construction-defect action accrues eight years after a project's substantial completion, a plaintiff will only have two years to file a claim before it is barred by the repose statute. The parties in this case agree that the date of substantial completion of The Palisades was May 1, 2002. The complaints against all defendants were filed within this ten-year period. Therefore, <u>N.J.S.A.</u> 2A:14-1.1(a) does not stand as a bar to plaintiff's claims.

Defendants' critique of <u>N.J.S.A.</u> 2A:14-1.1(a) does bear mentioning. Because the repose statute appears to bar only

33

claims involving "defective and unsafe" conditions arising from construction, defendants posit that this statute will not apply to a defective condition that does not raise safety concerns. Our charge here is not to rewrite the repose statute. See DiProspero v. Penn, 183 N.J. 477, 492 (2005). If the wording in this statute, as defendants believe, has the effect they suggest and does not represent good public policy, defendants' appeal on this issue must be to the Legislature.

## IV.

In summary, the following principles guide application of the property-tort statute of limitations in construction-defect cases. The date that a structure is deemed substantially complete oftentimes is when a cause of action accrues because some construction defects will be readily apparent on inspection and therefore the plaintiff will have a reasonable basis for filing a claim. But many construction defects will not be obvious immediately. In such instances, a cause of action does not accrue until the plaintiff knows or, through the exercise of reasonable diligence, should know of a cause of action against an identifiable defendant. A plaintiff who is a successor in ownership takes the property with no greater rights than an earlier owner. If the earlier owner knew or should have known of a cause of action against an identifiable defendant, the accrual clock starts then.

34

The determination of when a claim accrued ordinarily should be made at a Lopez hearing. At the hearing, the plaintiff will bear the burden of proving that the claim accrued at a time after a project's substantial completion. See Lopez, supra, 62 N.J. at 276. The plaintiff is in the best position to establish when he first knew or reasonably should have known of his cause of action. The court's decision must be based on objective evidence. See Caravaggio, supra, 166 N.J. at 246. The court may consider documentary evidence, deposition transcripts, and, in its discretion, take testimony. Last, the court must state its reasons for its findings of facts.

The test set forth above is not novel. It has evolved from our jurisprudence and should result in ease of application and predictable outcomes. Caravaggio articulated this approach for the statute of limitations governing personal injury cases, id. at 249-50, and this Court applied that test recently in a case involving the accrual date of a cause of action under the Tort Claims Act, Elazar, supra, ___ N.J. at ___ (slip op. at 11-14).

V.

For the reasons expressed, we reverse the judgment of the Appellate Division and remand to the trial court to conduct a Lopez hearing to determine when plaintiff's causes of action accrued against each defendant.

35

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.