**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0561-24

JONATHAN LITTLE,

    Plaintiff-Appellant,

v.

VDM METALS USA, LLC,
and ACERINOX GROUP,

    Defendants-Respondents.

_____

               Submitted October 15, 2025 – Decided November 25, 2025

               Before Judges Rose and Torregrossa-O'Connor.

               On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0687-22.

               Weiner Law Group LLP, attorneys for appellant (Sean M. Pena, of counsel and on the briefs; Michelle Yang, on the briefs).

               Biancamano & Di Stefano PC, attorneys for respondent VDM Metals USA, LLC (James G. Serritella, on the brief).

PER CURIAM

Plaintiff Jonathan Little appeals from a Law Division order granting summary judgment in favor of his employer, defendant VDM Metals USA, LLC.[1]  Because he suffered a workplace fall, and failed to show his injuries resulted from defendant's intentional wrong, plaintiff's exclusive remedy is under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -147.  We affirm.

I.

We review the factual record in the light most favorable to plaintiff as the non-moving party, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), and the following facts are largely undisputed.  Defendant, a steel manufacturer, owns and operates a steel mill in Florham Park where plaintiff worked for a year as a material "handler" or "finisher" until April 20, 2020, when he was injured in a fall.  That day, plaintiff's supervisor, Frendly Blas, asked plaintiff to help unload steel from a "flatrack" trailer, "an open trailer with only two sides – front and back."  Plaintiff was asked to assist due to a COVID-19 pandemic-driven staffing shortage.

After the steel had been removed, plaintiff assisted in clearing the trailer of packing materials and debris.  As he was exiting the trailer, plaintiff fell to

---

[1]  Acerinox Group is VDM's parent company.

the ground and suffered a head injury despite wearing a helmet. Plaintiff's injury rendered him unable to recall the accident or provide any pertinent information regarding his employment, training, or the circumstances surrounding his injury. Consequently, at his deposition, Blas provided the details of the accident, although he did not observe plaintiff's fall.

Blas, formerly a material handler, explained that role as packaging steel into bundles and preparing the bundles to leave defendant's facility. Blas testified plaintiff, like "everybody," occasionally unloaded trucks and had been trained to do so safely. According to Blas, plaintiff received safety training on fall prevention and "avoiding impact from straps when unloading a trailer." Blas described the unloading process as hooking steel plates by chain to a "sling," which is then lifted off the truck by overhead crane. Blas estimated the flatrack trailer bed sat five or six feet off the ground.

It was undisputed that a "Rollastep Mobile Platform," intended to "protect[] employees from falls" whenever employees accessed a surface at least four feet off the ground, was near the truck but not used at the time of plaintiff's fall. Blas was responsible for ensuring the use of the rollastep, but did not remember why it was not used during the incident.

3

A-0561-24

An Occupational Safety and Health Administration (OSHA) report reflected the rollastep was positioned nearby the trailer. The report noted "the primary cause of th[e] incident was complacency," and the rollastep was "generally not in use when there [we]re only a few plates" being unloaded. Plaintiff's forensic expert also evaluated the circumstances and cause of plaintiff's fall. The expert's report indicated plaintiff's training records did not show plaintiff "received training on flatrack trailers." Plaintiff's expert also concluded the rollastep was available but not used at the time of plaintiff's accident.

Plaintiff filed suit and alleged liability for negligence and gross negligence. Plaintiff's amended complaint alleged defendant's intentional wrongs caused his injury, circumventing the Act's bar to suit under N.J.S.A. 34:15-8. He asserted "VDM failed to provide adequate training, safety measures and protective equipment" and "operat[ed] without adequate staffing to safely operate the facility." After discovery concluded, defendant moved for summary judgment.

By order and oral decision, the trial court found plaintiff failed to establish defendant's conduct was an intentional act sufficient to surmount the Act's high bar and dismissed plaintiff's complaint. Specifically, the court set forth the

undisputed facts and accurately summarized the law.  In particular, the court employed the two-part standard set forth by our Supreme Court, see Laidlow v. Hariton Mach. Co., 170 N.J. 602, 617-19 (2002), that must be met to overcome the Act's bar to workplace injury lawsuits, exploring related caselaw.  The court determined plaintiff had not established his injuries were substantially certain to occur or fell outside the "fact[s] of life" attendant to industrial employment by sufficient proof to proceed to trial.

On appeal, plaintiff argues the trial court erred in granting summary judgment as he established sufficient facts to show defendant's intentional conduct.  He contends the record contained facts sufficient to show defendant did not train plaintiff to unload the flatrack trailer or protect his safety by using the rollastep safety measure, and "the fall from an elevated surface cannot be a fact of an industrial life for someone that finished and packed material."

## II.

We review de novo the trial court's grant of summary judgment.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  Employing the same standard as the court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts "viewed in the light most favorable to the non-moving party" nonetheless entitle defendant to judgment as a matter of

A-0561-24

law.  Ibid.; see R. 4:46-2(c).  If no genuine issue of material fact exists, the inquiry then turns to "whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We owe no deference to the court's legal analysis.  Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

Employing this well-established standard, we are satisfied the trial court properly granted summary judgment in favor of defendant.  Plaintiff did not meet his formidable burden to demonstrate an intentional wrong sufficient to override the Act's exclusive application.

The Act's remedial reach is intentionally vast for mutually-beneficial policy reasons.  Indeed, the Act effectuated "an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." Laidlow, 170 N.J. at 605 (quoting Millison v. E.I. Du Pont de Nemours & Co., 101 N.J. 161, 174 (1985)).  The employer accepts strict liability for workplace injuries, in return for limited and definite financial exposure.

A-0561-24

The Act provides:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
>
> [N.J.S.A. 34:15-8.]

Thus, the Act's remedy is generally exclusive, "except for injuries that result from an employer's 'intentional wrong'; for those, an injured employee is permitted to maintain a common-law tort action against the employer." Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 451 (2012) (quoting N.J.S.A. 34:15-8).

The intentional wrong exception is "interpreted very narrowly in order to further [the] underlying quid pro quo goals [of the Act], so that as many work-related disability claims as possible [can] be processed exclusively within the workers' compensation system." Mabee v. Borden, Inc., 316 N.J. Super. 218, 226-27 (App. Div. 1998) (citing Millison, 101 N.J. at 177). As our Supreme Court recognized, the exception, if "interpreted too broadly," could "swallow up the entire 'exclusivity' provision of the [Act]," because "virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee

A-0561-24

intentionally acting to do whatever it is that may or may not lead to eventual injury or disease." Millison, 101 N.J. at 177.

Thus, the Court has established a two-prong test to prove an employer committed an intentional wrong:

> (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the . . . Act to immunize.
>
> [Laidlow, 170 N.J. at 617.]

The plaintiff bears the burden of establishing both the "conduct" and "context" prongs.

To satisfy the conduct requirement, a plaintiff must show a defendant acted with "substantial certainty that injury or death [would] result." Van Dunk, 210 N.J. at 451. "[M]ere knowledge and appreciation of a risk" is insufficient. Millison, 101 N.J. at 179. Rather, the conduct inquiry examines whether the employer's conduct evidenced "a virtual certainty" of death or injury. Id. at 178.

A plaintiff must also establish the context prong, demonstrating the resulting injury is "more than a fact of life of industrial employment" and "plainly beyond anything the Legislature [would have] intended [the Act] to

8

immunize." Van Dunk, 210 N.J. at 462 (quoting Laidlow, 170 N.J. at 617). "[T]he context prong acts as an additional check against overcoming the statutory bar to a common-law tort action" to "reinforce the strong legislative preference for the workers' compensation remedy." Id. at 473. Although the same facts and circumstances generally will be relevant to both prongs of the intentional wrong test, a court deciding a defendant's summary judgment motion must make each of two separate inquiries.

Resolving whether the context prong of Millison is met is solely a judicial function. Laidlow, 170 N.J. at 623. The Laidlow Court also clarified OSHA violations do not automatically amount to intentional wrongs. Id. at 622-23. The alleged wrongful act must be accompanied by something more, typically deception, affirmative acts that defeat safety devices, or a willful failure to remedy past violations. See Van Dunk, 210 N.J. at 470 (holding a "finding of a willful violation under OSHA is not dispositive of the issue of whether the employer . . . committed an intentional wrong"); see also Laidlow, 170 N.J. at 616 (noting the "mere toleration of workplace hazards 'will come up short' of substantial certainty" (quoting Millison, 101 N.J. at 179)).

Plaintiff argues he presented facts sufficient to satisfy the conduct prong because defendant, suffering a staffing shortage, assigned him to perform a

A-0561-24

dangerous task of unloading metal from an elevated trailer without proper training or an adequate safety device. We have reviewed the record and are unpersuaded a jury could find defendant acted with the requisite knowledge that enlisting defendant to assist in unloading a trailer was substantially certain to cause him injury.

We recognize the record shows defendant failed to utilize the rollastep during small unloading jobs, and OSHA concluded defendant failed to provide the rollastep due to "complacency." However, there is no evidence in the record to suggest any employees previously fell from a trailer while unloading it. Further, here, plaintiff was not unloading the truck, but exiting the trailer after the work was completed. Thus, even presuming his inexperience with "unloading," plaintiff was not handling or removing the metal sheets when the fall occurred. Plaintiff was trained to avoid falls, albeit not specifically to avoid falls from flatrack trailers. Without evidence defendant was aware of a known or heightened danger, any lack of training, even considered together with defendant's failure to use a rollastep, does not demonstrate defendant was substantially certain harm would arise from its actions.

Accepting in plaintiff's favor the rollastep would have further safeguarded him from possible injury, there is no evidence defendant deliberately and

10

deceptively removed the safety device from the location. Further, even assuming defendant knew the failure to use the rollastep created some degree of danger, "mere knowledge by an employer that a workplace is dangerous does not equate to an intentional wrong." Van Dunk, 210 N.J. at 470 (citing Millison, 101 N.J. at 179). We have rejected the idea "that a longstanding negligent or reckless practice should be deemed an intentional wrong under the [Act] simply because the risk posed by an ongoing wrongful practice will eventually come to fruition under the law of probabilities." Hocutt v. Minda Supply Co., 464 N.J. Super. 361, 381 (App. Div. 2020).

As the trial court noted, Van Dunk is instructive. There, an employee was injured when the on-site supervisor made a "quick but extremely poor decision" to send the employee into a trench to perform a brief task without using the OSHA-required protective devices. Van Dunk, 210 N.J. at 471-72. Reversing the denial of summary judgment, the Court held there was no "objectively reasonable basis" for concluding the employer's single, spontaneous violation of safety protocol to perform a brief task "was substantially certain to lead to injury or death." Id. at 472. The Court noted certain commonalities among "intentional wrong" cases, such as "the employer's affirmative action to remove a safety device from a machine, prior OSHA citations, deliberate deceit regarding the

11

condition of the workplace [or] machine, . . . knowledge of prior injury or accidents, and previous complaints from employees." Id. at 471. The Court also noted "recklessness and gross negligence" are insufficient to meet the intentional wrong standard. Id. at 452.

Thus, viewing the facts in the light most favorable to plaintiff, we cannot conclude defendant knowingly exposed plaintiff to a virtual certainty of harm. Therefore, plaintiff has not set forth proof required to sustain an intentional wrong to overcome the workers' compensation bar.

Because plaintiff has not established the conduct prong, we need not address the context prong. See id. at 473. For the sake of completeness, however, we note the contextual standard is similarly onerous and requires a showing of conduct that "violates the social contract so thoroughly" the Legislature could not have intended to insulate such egregious behavior from civil remedies. Laidlow, 170 N.J. at 622. Plaintiff here did not establish facts that removed these circumstances from the heartland of those "part and parcel of everyday industrial life." Id. at 614-15. "Complacency" regarding a safety measure is far more akin to an immunized act of negligence than to the intentional or deceptive conduct the Act was not designed to protect. Further, in the face of an unprecedented, unavoidable staffing shortage resulting from

12

the pandemic, the transfer of plaintiff from his routine function to perform an atypical unloading task from an elevated surface was not so wide of the immunized circumstances subject to the Act's exclusive remedies.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0561-24