**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4168-19

SPECIAL POLICE
ORGANIZATION OF NEW
JERSEY and THE FOLLOWING
MEMBERS: HERIBERTO
ACEVADO, JUAN ALVIRA,
JAMES ANDREWS, PALMER
AMOS, JOAQUIN AYERBE,
JORGE ALEX BARBOSA,
JABREE BELL, RENALDO
BARTE, ALPHONSO BENTON,
THIAGO BETHONICO, KYLE
BROWN, CLIFTON BURCHETT,
CARLOS CABRERA, ALBALINE
CARABALLO, TRACY CHILDRESS,
CAROLINE CLARK, LUCIANO
COLLAZO, VINCENT CORDI,
CHARLIE DAVIS, CURTIS
DORCH, TUWAN FLOYD,
WILLIE FLOYD, MICHAEL
GILLENS, KENDALL GOLDEN,
GENNARO GUANCI, ISMAEL
GUERRERO, GIOVANNI GIIDA,
HARRISON HOGUE, MARK
HALLOWAY, JEROME JEWELL,
WILBERT JOHNSON, VICTOR
JORGE, LARRY KING, DARRELL
LAMPLEY, ALANA LAWRENCE,
GIUSEPPE MAIORANO,
BENJAMIN MAURIELLO,

MARIA MELENDEZ, DELVIS MATOS, WALTER MELVIN, HORTENSE MERRITT, REGINALD MERRITT, JOHN MEYERS, EUSEBIO MOREIRA, MARK ODOM, DAVID PAIGE, OSCAR PANNELLA, RONALD M. PETFORD, IRIS PHILSON, RICARDO PRATT, MANNY REBIMBAS, JAMIE RIVERA, GARY ROBINSON, MIGUEL J. RODRIGUEZ, CARMINE RUSSO, HAKEEM SALEEM, ISRAEL SEGARRA, JOHN SILVA, SHAWN SIMMONS, ALBERTO SMITH, LUIS SOTO, ANTHONY SUTTON, ELLIOT TAYLOR, DIKRAN TEHLIKIAN, ROBERTO TELLEZ, ALAIN VARELA, GEORGE VASQUEZ, LOUIS WALKER ADMIRAL WIMBERLY, TIMOTHY WISE, TARIQ YASIN, DEVIN ZAMORA, and on behalf of ALL SPECIAL POLICE HIRED BY THE CITY OF NEWARK,

          Plaintiffs-Appellants,

v.

CITY OF NEWARK, ANTHONY AMBROSE, CITY OF NEWARK MAYOR RAS BARAKA, NEWARK CITY COUNCIL MEMBERS, LAMONICA MCIVER, LUIS A. QUINTANA, JOHN SHARPE JAMES, JOSEPH A. MCCALLUM JR., ANIBAL RAMOS JR., AUGUSTO AMADOR, EDDIE OSBORNE and

CARLOS M. GONZALEZ,

Defendants-Respondents.

_____

Submitted October 25, 2021 – Decided July 25, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7121-19.

Eldridge Hawkins, attorney for appellants.

Yvette Gibbons, attorney for respondents City of Newark Mayor Ras Baraka, Newark City Council Members LaMonica McIver, Luis A. Quintana, John Sharpe James, Joseph A. McCallum Jr., Anibal Ramos Jr., Augusto Amador, Eddie Osborne and Carlos M. Gonzalez.

Schenck, Price, Smith & King, LLP, attorneys for respondent Anthony Ambrose (Gary F. Werner, Jeffrey T. LaRosa and Ryder T. Ulon, of counsel and on the brief).

PER CURIAM

The complaint in this matter asserts eleven separate causes of action arising from a simple and singular factual basis. Plaintiffs Special Police Organization of New Jersey and seventy-two of its members allege that as a condition of a special police officer's retention as independent contractors by the City of Newark, the officer is required to voluntarily perform twenty hours of

3

service each year on behalf of the City without compensation. Each of plaintiffs' eleven causes of action is founded, in one fashion or another, on the premise the requirement violates a special police officer's constitutional, common law, and statutory rights.

Plaintiffs appeal from orders granting summary judgment to defendants, the City, Newark Mayor Ras Baraka, and Newark City Council members Lamonica McIver, Luis A. Quintana, John Sharpe James, Joseph A. McCallum, Jr., Anibal Ramos, Jr., Augusto Amador, Eddie Osborne, and Carlos M. Gonzalez.[1] Plaintiffs also appeal from an order granting the City's Public Safety Director Anthony Ambrose's motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Plaintiffs further appeal from orders denying their cross-motion for partial summary judgment and for

_____

[1] The notice of motion filed on behalf of these defendants is captioned as a "[] MOTION TO DISMISS THE COMPLAINT" pursuant to Rule 4:4-6, but the motion also includes a request for "dismissal" under Rule 4:46-2, which governs summary judgment motions. The court properly considered the motion as requesting summary judgment because it is supported by an affidavit asserting facts outside of the allegations in the complaint. See R. 4:6-2(e) (providing "[i]f, on a motion to dismiss" for failure to state a claim upon which relief may be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment").

reconsideration of the summary judgment and dismissal orders. Unpersuaded by plaintiffs' claims the court erred by entering the orders, we affirm.

I.

Because plaintiffs challenge orders granting summary judgment pursuant to Rule 4:46-2 and dismissing the complaint for failure to state a claim upon which relief may be granted pursuant to Rule 4:6-2(e), we summarize both the factual allegations in the complaint and the undisputed material facts presented to the motion court. The material facts, as alleged in the complaint and established by the summary judgment record, are not disputed.

The individual plaintiffs are, or were, special police officers. According to plaintiffs, special police officers are "[]independent contractors[]" who comprise a "class of person[s] . . . who obtain employment from private entities under the authority of the City." In their brief on appeal, plaintiffs reiterate, as a matter of fact, special police officers are independent contractors and not employees of the City; they emphatically state "THERE IS NO DISPUTE THAT PLAINTIFFS ARE NOT EMPLOYEES" of the City.[2]

---

[2] Because plaintiffs assert they are independent contractors as a matter of fact and law, and defendants do not dispute plaintiffs' claim, there is no issue presented by either the allegations in the complaint or the summary judgment record as to whether plaintiffs are independent contractors or employees. For

A-4168-19

purposes of considering whether the complaint alleges sufficient facts supporting the asserted causes of action, see R. 4:6-2(e), or the record permits entry of summary judgment on plaintiffs' claims against plaintiffs as a matter or law, see R. 4:6-2(c), we accept plaintiffs' averments, representations, and insistence they are independent contractors while serving as special police officers, including while they perform the twenty-hours of volunteer work each year without compensation. See generally Est. of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 594-95 (2015) (discussing "hybrid" test based on analysis of twelve factors to determine if an individual is an employee or independent contractor under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -65); see also Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302-05 (2015) (discussing standards for determining whether an individual is an employee or an independent contractor for purposes of determining the applicability of the Wage Payment Law, N.J.S.A. 34:11-4.1 to -4.14, and the Wage and Hour Law, N.J.S.A. 34:11-56(a) to -56(a)38). Plaintiffs did not argue before the motion court, nor argue on appeal, they are employees of the City while performing their duties, including those performed pursuant to the volunteer requirement. As a result, we do not consider or decide whether, for example, the volunteer requirement challenged in the complaint violates the Wage Payment Law, the Wage and Hour Law or any other state or federal statute governing the payment of wages to employees. See, e.g., Hargrove, 220 N.J. at 302-305 (explaining requirements of the Wage Payment Law and Wage and Hour Law are applicable to employees but not independent contractors); Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 95-96 (2007) (allowing a class action to proceed in part on claims by current and former employees that their employer violated the Wage and Hour Law and "N.J.A.C. 12:56-5.2 (mandating compensation for all hours worked)" by failing to pay them for time worked); see also Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding issues not briefed on appeal are deemed waived); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (explaining a reviewing court need not consider arguments not presented to the trial court when the opportunity to do so was available unless such arguments go to the court's jurisdiction or concern matters of significant public interest).

6

The policies and requirements applicable to the City's special police officers are promulgated in General Orders issued by the Newark Police Department. The General Orders provide special police officers are not members of the Newark Police Department; their appointments to the position expire annually on December 31; and applications for renewal of their appointments must be made no later than October 1.[3]

The pertinent iterations of the General Orders have included different versions of the volunteer requirement plaintiffs' challenge in their complaint.[4] The 2014 General Order stated:

> Special [p]olice [o]fficers are required to volunteer, on a yearly basis, twenty hours of service for Special Events to the City of Newark while working in the capacity of a Newark [s]pecial [p]olice [o]fficer. It shall be the responsibility of all [s]pecial [p]olice [o]fficers to fulfill this obligation. Failure to do so may result in disciplinary action.

The 2016 General Order modified the volunteer requirement, stating:

---

[3] The General Orders also provide that the Special Police Officers Association, a plaintiff here, "is not a union." The status of the association as a purported representative of the individual plaintiff special police officers is not defined in the motion record. We need not address the association's status, however, because the complaint alleges the individual plaintiffs are or were special police officers who are, or were, subject to the requirements of the General Orders.

[4] The complaint does not allege that any special police officer has been disciplined for failing to perform the twenty hours of volunteer service.

> Special [p]olice [o]fficers are required to volunteer, on a yearly basis, for a minimum of eight (8) hours for training and twelve (12) hours of service for a total of twenty (20) hours per calendar year, for Special Events for the City of Newark while working in the capacity of a Newark [s]pecial [p]olice [o]fficer. It shall be the responsibility of all [s]pecial [p]olice [o]fficers to fulfill this obligation. Failure to do so may result in disciplinary action.

The 2017 General Order imposed a different volunteer obligation:

> Special [p]olice [o]fficers are required to volunteer twenty (20) hours within a one (1) year period, beginning on December 1st and ending on November 30th of the reporting year. These hours can be completed by working in the capacity of a Newark [s]pecial [p]olice [o]fficer at special events or by conducting other functions as instructed by the Public Safety Director or the Chief of Police for the City of Newark. All volunteer hours MUST be satisfied by November 30th of each year. It shall be the responsibility of all [s]pecial [p]olice [o]fficers to fulfill this obligation. Failure to do so may result in disciplinary action.

In March 2019, plaintiffs filed a complaint against defendants in federal district court alleging various federal and state law causes of action challenging the volunteer requirement. Defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted. See F.R.C.P. 12(b)(6).

In a written opinion, the district court found plaintiffs failed to adequately plead their claim the volunteer requirement violated the prohibition against

8

"slavery [and] involuntary servitude" in the Thirteenth Amendment to the United States Constitution. The court explained the Thirteenth Amendment "prohibits 'compulsory labor akin to African slavery'" and "[t]he twenty hours of volunteer work required to maintain [a special police officer's] contract[] of employment is not the type of involuntary servitude prohibited by the Thirteenth Amendment."

The court dismissed the federal causes of action and, in an exercise of its discretion, dismissed plaintiffs' state-law claims without prejudice. Plaintiffs subsequently filed a complaint in the Law Division alleging eleven state law claims against the same defendants based on the same facts as those in the federal action.

In their Law Division complaint, plaintiffs allege the Special Police Organization of New Jersey is an organization of special police officers, and the individual plaintiffs are special police officers in the City. The complaint further alleges the individual plaintiffs "are a class of person[s]" who are "independent contractors" and "who obtain employment from private entities under the authority of the City."

Plaintiffs allege that, as a result of the volunteer requirement imposed by the various General Orders, special police officers have been, and continue to

be, required to work twenty hours per year without compensation at various City events.

Plaintiffs claim the individual defendants, acting in their official capacities, recklessly and intentionally inflicted severe emotional distress by depriving the individual plaintiff special police officers of their "[c]ivil and [c]onstitutional rights" (first count), and negligently, recklessly, and wantonly disregarded the special police officers' rights by failing to ensure their protection and by failing to train and supervise others who deprived them of their rights (second count).

Plaintiffs allege defendants violated the prohibition against "involuntary service" in violation of Article I, paragraph 20 of the New Jersey constitution (third count), and violated plaintiffs' rights under Article I, paragraphs 2(a), 6, 9, 18, 19, 20, and 22 of the New Jersey constitution (fourth count). The complaint further avers individual defendants' actions constituted intentional and reckless infliction of severe emotional distress (fifth count). In the sixth count, plaintiffs allege defendants violated the LAD, N.J.S.A. 10:5-1 to -50; N.J.S.A. 10:1-2; and N.J.S.A. 40A:9-6 by denying plaintiffs access to places of public accommodation. In two separate counts, plaintiffs allege defendants violated various provisions of our Criminal Code, and that some of those

violations support a cause of action under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (counts seven and eight).

The complaint includes an additional claim the volunteer requirement deprived plaintiffs of equal access to places of public accommodation and defendants otherwise retaliated against plaintiffs in violation of the New Jersey Civil Rights Act (ninth count). Plaintiffs also allege defendants' actions constituted robbery, extortion, and racketeering in violation of the Criminal Code, see N.J.S.A. 2C:41-1 to -6.2, (tenth count). Although plaintiffs did not assert a breach of contract claim, and assert they are not parties to contracts with the City, they allege in the eleventh count that defendants breached the covenant of good faith and fair dealing and intentionally interfered with plaintiffs' "[b]eneficial [s]tatus."

As noted, following the filing of the Law Division complaint, defendant Ambrose moved for dismissal under Rule 4:6-2(e), arguing the complaint failed to state a claim upon which relief may be granted against him, and the remaining defendants moved for dismissal and also for summary judgment in accordance with Rule 4:46-2. After hearing argument on the motions, the court rendered a decision from the bench explaining plaintiffs failed to cite any legal authority establishing the volunteer requirement is unlawful; there is no legal prohibition

11

barring independent contractors from agreeing to provide voluntary services as a condition for providing other services for compensation; and plaintiffs are not compelled to satisfy the volunteer requirement but instead freely and voluntarily accepted the volunteer requirement as a condition of their annual appointments as special police officers.

The court rejected plaintiffs' claim the volunteer requirement constitutes involuntary servitude prohibited by the Thirteenth Amendment to the United States Constitution. The court held plaintiffs are collaterally estopped from asserting the requirement constitutes involuntary servitude because the federal district court rejected the identical claim plaintiffs asserted against the same defendants.

The court also determined plaintiffs failed to adequately plead or present evidence of a criminal enterprise sufficient to support a claim under N.J.S.A. 2C:41-1 to -6.2, which define the criminal offense of racketeering and plaintiffs refer to as the "RICO" statute. Additionally, the court concluded the first seven counts of the complaint were time-barred by the two-year limitations period in N.J.S.A. 2A:14-2(a) because the volunteer requirement was first promulgated in the 2014 General Order, and the complaint was not filed until 2019. The court

12

rejected plaintiffs' assertion the claims in those counts were not time-barred based on the continuing violation doctrine.

The court also determined plaintiffs' infliction of emotional distress claims failed because plaintiffs neither pleaded nor presented evidence they suffered the requisite emotional distress to support the causes of action. The court found no basis for plaintiffs' retaliation claims under the LAD because plaintiffs are independent contractors and not employees of the City.

The court entered orders granting Ambrose's motion to dismiss the complaint with prejudice, granting the remaining defendants summary judgment, and denying plaintiffs' cross-motion for partial summary judgment. The court later entered orders denying plaintiffs' two motions for reconsideration. This appeal followed.

Plaintiffs present the following arguments for our consideration:

POINT I

CONTRARY TO [DEFENDANTS'] POSITION, [PLAINTIFFS'] COMPLAINT DOES NOT SEEK TO REWRITE ANY CONTRACT WITH THE CITY IN CONTRAVENTION OF NEW JERSEY LAW.

POINT II

THE CLAIMS SET FORTH IN THE FIRST THROUGH SEVENTH COUNTS OF THE

13

COMPLAINT ARE NOT TIME BARRED BECAUSE OF A TWO-YEAR STATUTE OF LIMITATIONS.

POINT III

PLAINTIFFS['] NON-STATUTORY TORT CLAIMS NEED NOT BE DISMISSED FOR FAILURE TO FILE A TIMELY NOTICE OF TORT CLAIM.

POINT IV

[PLAINTIFFS'] COMPLAINT SHOULD NOT HAVE BEEN DISMISSED AS [PLAINTIFFS] HAVE PLED VERY COGNIZABLE CLAIMS AGAINST THE DIRECTOR AND OTHER DEFENDANTS.

A. [DEFENDANTS'] COUNSEL THROWS INTO THE POT EVERY NOW AND THEN A NON-REQUIREMENT TO ATTEMPT TO PERSUADE OR DISSUADE THE COURT. IT IS ASSUMED THIS APPELLATE COURT SEES WHAT I SEE. [DEFENDANTS'] COUNSEL UTILIZES . . . FEDERAL CASES IN ATTEMPTS TO REACH THE REQUIREMENT OF NECESSITY IN SEEKING MEDICAL TREATMENT . . . AS A SINE QUA NON FOR RECOVERY (WHICH IT IS NOT).

B. PLAINTIFFS INDEED ARTICULATED FACTS OR CONDUCT EVINCING A VIOLATION OF THEIR RIGHTS OF THEIR RIGHTS UNDER ARTICLE I OF THE NEW JERSEY CONSTITUTION.

C. PLAINTIFFS DO STATE A DISCRIMINATION CLAIM AGAINST THE DIRECTOR UNDER NEW JERSEY'S LAW AGAINST DISCRIMINATION AS THEY ARE MEMBERS OF THE PUBLIC ENTITLED TO ALL

14

BENEFITS AND RIGHTS, ETC. OF THE CITY OF NEWARK WHICH IS A PLACE OF PUBLIC ACCOMODATION UNDER THE [LAD] AS DEFINED IN N.J.S.A. 10:12-1 ET SEQ.

D.  PLAINTIFFS ARE "DE FACTO OFFICERS" WARRANTING ADDITIONAL COMPENSATION UNDER N.J.S.A. 40A:9-6.

E.  PLAINTIFFS HAVE ADEQUATELY PLED AND PROVEN THE EXISTENCE OF A CRIMINAL ENTERPRISE AND CRIMINAL BEHAVIOR SUFFICIENT TO SUSTAIN A CLAIM UNDER NJ RICO.

F.  [PLAINTIFFS'] CLAIMS OF BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING DO NOT FAIL AS PLAINTIFFS DO NOT SEEK TO IMPOSE CONTRACTUAL ADDITIONS INCONSISTENT WITH THE TERMS OF THEIR UNLAWFUL "CONTRACTUAL" ARRANGEMENT WITH THE CITY.

POINT V

THE DIRECTOR IS NOT ENTITLED TO QUALIFIED IMMUNITY.

POINT VI

DEFENDANT AMBROSE'S ALLEGATIONS THAT PLAINTIFFS MAKE AN IMPROPER ATTEMPT TO REWRITE THEIR (NON-EXISTING) CONTRACT WITH THE CITY IS AN UNSUPPORTED NON-RELEVANT ARGUMENT WITH NO LEGAL EFFECT.

A-4168-19

POINT VII

THE LAW OF CONTINUING VIOLATION IS
APPLICABLE [sic] FAVORABLY TO PLAINTIFFS.

POINT VIII

PLAINTIFFS ARE NOT BARRED FROM
ASSERTING AN EQUAL PROTECTION CLAIM
AND HAVE SUCCESSFULLY PROVEN SAME.

POINT IX

NO PARTY DEFENDANT IS ENTITLED TO
QUALIFIED IMMUNITY WITH REGARD TO
VIOLATING THE CONSTITUTION, CRIMINAL
LAW AND ENGAGING IN ULTRA VIRIOUS ACTS.

POINT X

THERE IS NO DISPUTE THAT PLAINTIFFS ARE
NOT EMPLOYEES AND ARE NOT A PROTECTED
CLASS UNDER N.J.S.A. 10:5-12(a).

POINT XI

PLAINTIFFS SHOULD HAVE BEEN GRANTED
THEIR RECONSIDERATION MOTION.

II.

We conduct a de novo review of a court's decision on a motion to dismiss

for failure to state a claim upon which relief may be granted.  Sashihara v. Nobel

Learning Cmtys. Inc., 461 N.J. Super. 195, 200 (App. Div. 2019).  "We examine

'the legal sufficiency of the facts alleged on the face of the complaint, doing so

16                                                              A-4168-19

with liberality, and [accord] every reasonable inference to the plaintiffs.'" Id. at 200-201 (alteration in original) (quoting Borough of Seaside Park v. Comm'r of N.J. Dep't of Educ., 432 N.J. Super. 167, 200 (App. Div. 2013)). The test is "whether a cause of action is 'suggested' by the facts." Id. at 201 (quoting Printing Mart-Morristown v. Sharp Elecs., 116 N.J. 739, 746 (1989); Velantzas v. Colgate-Palmolive, 109 N.J. 189, 192 (1988)). A reviewing court will "dismiss the pleading 'if it states no basis for relief and discovery would not provide one.'" Ibid. (quoting Rezem Fam. Assocs. v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011)).

Similarly, we review de novo the grant of summary judgment "in accordance with the same standard as the motion judge." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). That standard is dictated by Rule 4:46-2(c), which states summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

A.

Plaintiffs argue the court erred by finding: the causes of action asserted in counts one through seven of the complaint are barred by the two-year statute of limitations applicable to causes of action for injuries to the person, N.J.S.A. 2A:14-2; the continuing violation doctrine did not support a finding the claims were timely filed; and the "non-statutory" tort claims asserted in those counts are barred because a notice of claim under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -59:12-3, was not timely served. Determining the date upon which a statute of limitations begins to run is an issue of law, subject to plenary review. Town of Kearny v. Brandt, 214 N.J. 76, 93 (2013). The same standard applies to the court's determination of the timeliness of the service of notice of a tort claim under the TCA. See J.P. v. Smith, 444 N.J. Super. 507, 524-29 (App. Div. 2016) (applying plenary standard of review to court's determination of timeliness of tort claims notice under the TCA).

Plaintiffs' arguments are confusing, inconsistent, and wholly unpersuasive. For example, in Point II of their merits brief, plaintiffs argue the court erred by relying on the two-year statute of limitations in N.J.S.A. 2A:14-2(a) because "N.J.S.A. 2A:14-1 has a [six]-year statute for contracts," and the RICO statute, "has a [five to ten] year statute of limitations." The argument

18

borders on the frivolous because counts one through seven of the complaint do not assert either contract or RICO claims.[5]

Similarly, in Point III, plaintiffs incongruously argue the court erred by finding the "non-statutory claims" asserted in the first seven counts were improperly dismissed based on a failure to comply with the notice requirements of the TCA, see N.J.S.A. 59:8-8, but plaintiffs do not offer any legal authority supporting the claim. They solely rely on the Court's holding in Fuchilla v. Layman, 109 N.J. 319, 338 (1988), that the notice requirements of the TCA are inapplicable to statutory claims asserted under the LAD. Contrary to plaintiffs' assertion, in Fuchilla the Court did not decide the notice requirements of the TCA are inapplicable to "non-statutory" claims. Thus, Fuchilla provides no

---

[5] As noted, counts one, and five allege tort claims for negligent infliction of emotional distress, and intentional infliction of emotional distress claims respectively, each of which is subject to the two-year statute of limitations in N.J.S.A. 2A:14-1. Fraser v. Bovino, 317 N.J. Super. 23, 34 (App. Div. 1998). Similarly, but vaguely, count two alleges plaintiffs' suffered injuries due to the negligent supervision of those they claimed negligently inflicted emotional distress. Plaintiffs do not dispute N.J.S.A. 2A:14-2(a) provides the applicable limitations period for that claim. In counts three, four, and seven, plaintiffs allege violation of their civil rights and constitutional claims, and the New Jersey Civil Rights Act, and those claims are subject to the two-year limitations period in N.J.S.A. 2A:14-2(a). Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 298 (App. Div. 2017). Count six alleges a violation of the LAD and is subject to the two-year statute of limitations. Montells v. Haynes, 133 N.J. 282, 292-93 (1993). Plaintiffs' putative RICO claim is not asserted in the first seven counts; it is asserted in count eight.

support for plaintiff's argument the court erred by dismissing the "non-statutory" causes of action based on plaintiffs' purported failure to comply with the notice requirements of the TCA.[6]

Despite the incongruity of plaintiff's arguments, we are convinced the court erred by dismissing the complaint on Ambrose's motion and granting the remaining defendants summary judgment on statute of limitations grounds and the purported failure of plaintiffs to file a timely notice of claim as required under the TCA. We find the record inadequate to support the court's determinations.

The primary task of a court considering whether a claim is filed within the applicable limitations period is when the cause of action accrued. The Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017). "Accrual of an action is the trigger that commences the statute-of-limitations clock." Ibid. Generally, a cause of action accrues "when 'the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she

---

[6] As to the first seven counts of the complaint, Fuchilla applies only to count six, which asserts a claim under the LAD. To the extent the court's decision dismissing, and granting summary judgment on, count six is founded on a purported failure to timely file a notice of tort claim, as is required under N.J.S.A. 59:8-8, the court erred in doing so.

was injured due to the fault of another.'" Id. at 443 (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)).

To prosecute a tort claim against a public entity, a plaintiff must not only file the claim within the applicable limitations period, the plaintiff must also "file a notice of claim within ninety days of the accrual of the cause of action." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2017); see also N.J.S.A. 59:8-8. A court must determine the date of accrual "in accordance with existing law in the private sector." Id. at 134 (quoting Beauchamp v. Amedio, 164 N.J. 111, 116 (2000)).

Thus, to assess the timeliness of plaintiffs' claims in the first seven counts of the complaint for statute of limitations purposes and for plaintiffs' compliance with the notice requirements of the TCA, it was necessary for the court to determine the accrual dates of the causes of action in the complaint's first seven counts. The record establishes the City first promulgated the General Orders imposing the volunteer requirement in 2014, and then issued orders revising the requirement in 2016 and 2017. The court, however, erred by concluding counts one through seven are time-barred simply because the complaint was filed more than two years after the promulgation of the 2014 General Order.

A-4168-19

The record is bereft of evidence establishing when the City first appointed each of the individual plaintiffs as a special police officer, demonstrating when each was notified of the various General Orders imposing the volunteer requirement, and detailing other circumstances pertinent to determining when a reasonable person appointed as a special police officer, exercising ordinary diligence, would have been alerted he or she was damaged by the City's allegedly wrongful imposition of the volunteer requirement. See The Palisades at Fort Lee Condo. Ass'n, 230 N.J. at 442. Lacking such a record, it is not possible to determine the accrual date for plaintiffs' causes of action in counts one through seven such that the limitations period for the claims may be properly determined. We therefore reject the court's dismissal and summary judgment award on the causes of action in the first through seventh counts based on statute of limitations grounds.

For the same reasons, the court erred by determining the continuing violation doctrine could not, as a matter of undisputed fact, support a finding the claims asserted in counts one through seven were timely filed as a matter of law. The doctrine is an equitable remedy that allows a plaintiff to "pursue a cause of action even after strict application of a statute of limitations would bar relief," Fox v. Millman, 210 N.J. 401, 416 (2012), and it "provides that when an

individual experiences a 'continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases,'" Roa v. Roa, 200 N.J. 555, 568 (2010) (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999)).  The record simply does not permit a determination as to whether the equitable doctrine supports an extension of the limitation periods, even assuming an extension is required, for plaintiffs' claims.

The record also does not permit a determination as to the timeliness of the plaintiffs' notice of tort claim under the TCA.  We cannot determine based on the record presented whether any or all of plaintiffs' claims are barred based on a purported failure to comply with the procedural or substantive requirements of the Act because the record does not permit a determination of each claim's accrual date.  See Bel Elazar, 230 N.J. at 133-34 (explaining the first step in assessing whether a notice of tort claim under N.J.S.A. 59:8-8 is "determin[ing] the date on which the claim accrued").  We therefore find the record inadequate to support defendants' arguments, made in Ambrose's motion to dismiss and the other defendants' summary judgment motion, that plaintiffs' claims are procedurally bar under the TCA.

B.

We next consider whether the motion court correctly dismissed plaintiffs' complaint against Ambrose and granted dismissal and summary judgment to the remaining defendants. That task is made difficult because plaintiffs' brief on appeal does not detail or define the elements of each of their causes of action, offer argument supporting their claims the court erred by either dismissing or granting summary as to each, or cite to competent evidence in the record establishing the essential elements of each.[7] Instead, their brief is replete with

---

[7] For example, plaintiffs' complaint generally alleges defendants violated the RICO statute, but in their brief on appeal plaintiffs do not define or address the elements of a RICO cause of action, see State v. Ball, 141 N.J. 142, 181 (1995) (describing the essential elements of RICO claim), and plaintiffs do not cite to any evidence supporting the claim. RICO claims requires proof of a "pattern of racketeering activity"—that is, evidence showing defendants "[e]ngag[ed] in at least two incidents of racketeering conduct" and "that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." N.J.S.A. 2C:41-1(d). Further, "racketeering activity" requires proof of "crimes under the laws of New Jersey or . . . equivalent crimes under the laws of any other jurisdiction," or any act falling within the federal statutory definition of "racketeering activity." N.J.S.A. 2C:41-1(a)(1)(2).

Plaintiffs' complaint contains nothing more than vague assertions of criminal conduct, and the record is devoid of any evidence supporting the claim. Several of the criminal statutes plaintiffs enumerate in the complaint are manifestly inapplicable: four pertain to auto theft crimes—N.J.S.A. 2C:20-2.1, 2C:20-2.2, 2C:20-16, and 2C:20-18; N.J.S.A. 2C:28-4 pertains to the filing of false reports to law enforcement authorities; N.J.S.A. 2C:13-2 defines the crime

broad, conclusory assertions unsupported by reasoned legal arguments addressing the elements of the claims asserted in the complaint. Our standards of review, and our role as an appellate court, does not require that we forage through the record to determine whether the court committed errors plaintiffs fail to expressly identify or provide legal argument. See Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned).

Our de novo review also does not require that we conduct independent research concerning the propriety of the volunteer requirement and provide an advisory opinion on the legality of the requirement, and we offer none. Based on the broad, frequently vague, repeatedly inconsistent, and conclusory assertions presented in plaintiffs' brief, we limit ourselves to the arguments set forth in the brief's point headings, see Mid-Atlantic Solar Energy Industries Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011) (declining to

_____

of criminal restraint; N.J.S.A. 2C:13-5 pertains to criminal coercion; N.J.S.A. 2C:30-2 pertains to official misconduct; and N.J.S.A. 2C:21-5, which defines the offense of misapplication of entrusted property and the property of the government. Plaintiffs further cite N.J.S.A. 2C:30-16, a non-existent statute. Plaintiffs only statutory citation related to racketeering is N.J.S.A. 2C:41-2(c). As noted, plaintiffs offers no allegations and no evidence supporting a viable claim defendants committed any of the alleged offenses, and, as we explain, all the claims are founded on the incorrect premise the volunteer requirement is unlawful.

address issues not specified in a point heading in violation of Rule 2:6-2(a)(6)), and we address the singular and fundamental assertion upon which all the asserted causes of action are based—that the volunteer requirement is unlawful.

Plaintiffs' oft-repeated contention the volunteer requirement is unlawful constitutes the singular foundation for their claims, but it is untethered to any citation to a constitutional, statutory, or common law principle establishing it is unlawful for an independent contractor to agree to provide services without compensation as a condition of the contractor's retention to provide other services for which he or she is paid. In other words, although plaintiffs claim the volunteer requirement is unlawful as applied to them as the independent contractors they claim to be, they do not cite to any legal principle establishing that is so.

Plaintiffs argued before the motion court, and argue on appeal, the volunteer requirement is unlawful because it is tantamount to the "slavery" and "involuntary servitude" prohibited by the Thirteenth Amendment to the United States Constitution. The court correctly determined the claim is barred under the doctrine of collateral estoppel because the identical claim was considered and rejected by the federal district court in plaintiffs' prior lawsuit against defendants, see In re Estate of Dawson, 136 N.J. 1, 20-21 (1994) (explaining

requirements for application of doctrine of collateral estoppel to bar re-litigation of an issue decided in a prior proceeding), and plaintiffs do not challenge the motion court's application of the doctrine as a bar to their involuntary servitude claim, see Sklodowsky, 417 N.J. Super. at 657 (explaining an issue not briefed on appeal is deemed waived).

Additionally, as the district court recognized, the volunteer requirement is also unlike the slavery and involuntary servitude prohibited by the Thirteenth Amendment. "[T]he term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which, in practical terms, would tend to produce like undesirable results." David v. Vesta Co., 45 N.J. 301, 320 (1965) (alteration in original) (quoting Butler v. Perry, 240 U.S. 328, 332 (1916)). The Third Circuit Court of Appeals has explained that "[m]odern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." Steirer v. Bethlehem Area Sch. Dist., 987 F.2d 989, 999 (3rd Cir. 1993). There is no involuntary servitude where "individuals ha[ve] alternatives to performing the labor," even if the choice of not working "may not be appealing." Id. at 1000.

There is no involuntary servitude within the meaning of the Thirteenth Amendment, where, as here, "the servant knows he [or she] has a choice between

continued service and freedom, even if the master has led him[or her] to believe that the choice may entail consequences that are exceedingly bad." United States v. Booker, 655 F.2d 562, 566-67 (4th Cir. 1981) (quoting United States v. Shackney, 333 F.2d 475, 486 (2d Cir. 1964)). Thus, there is no involuntary servitude "when the state requires attorneys to provide a fixed number of hours of legal representation without compensation as a condition of practicing law," and "the . . . government collect[s] liquidated damages from a participant in the National Health Service Corps scholarship program who, after receiving the scholarship money and completing his medical degree, declined to perform the required services." Steirer, 987 F.2d at 999. That is because "the lawyer can choose not to practice law to avoid the mandatory service requirement . . . [and] the doctor can refuse to provide the contracted-for services and instead pay the damages for breach of contract." Id. at 1000. The same is true here.

The volunteer requirement does not constitute involuntary servitude because plaintiffs are not compelled to perform the volunteer services. The individual plaintiffs have the unfettered choice to avoid performing volunteer services by opting not to accept an appointment as a Newark special police officer that is expressly conditioned on the requirement that they comply with the requirements of the General Orders, including the requirement they provide

twenty-hours of volunteer services to the City without compensation. As a result, there is nothing involuntary about their decision to accept the City's appointment with their agreement as independent contractors to provide the volunteer services. The special police officers may not like the consequences of their choice, but the fact that they have the choice not to work as special police officers is inconsistent with the notion that fulfillment of the volunteer requirement constitutes involuntary servitude.

Plaintiffs also allege the volunteer requirement is unlawful because it runs afoul of N.J.S.A. 40A:14-146.14, which defines the terms of appointment of special police officers. They argue the statute mandates they be compensated for all services performed as part of their appointments, relying exclusively on the following portion of the provision:

> A special law enforcement officer shall be deemed to be on duty only while the officer is performing the public safety functions on behalf of the local unit pursuant to this act and when the officer is receiving compensation, if any, from the local unit at the rates or stipends established . . . by ordinance.[8]

8  In their brief on appeal, plaintiffs quote this portion of N.J.S.A. 40A:14-146.14, but they omit the phrase "if any" from their recitation of the provision. As we explain, the phrase "if any" undermines plaintiffs' claim the provision supports their claim the volunteer requirement is unlawful. As such and given the significance of the excluded words to the proper interpretation of the statute, plaintiffs' decision to omit those words from their brief, and their failure to

[N.J.S.A. 40A:14-146.14(b) (emphasis added).]

We find no support in the plain language of this provision for plaintiffs' claim the volunteer requirement is unlawful. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (explaining statutory interpretation requires consideration of the plain language of the statute because that is the best indicator of legislative intent).

In the first instance, the provision does not require the payment of any compensation to special police officers. The provision defines only when special police officers shall be "deemed to be on duty." N.J.S.A. 40A:14-146.14. Thus, special police officers who are performing public safety functions and are "receiving compensation, if any, from" the City "at the rates or stipends" established by ordinance are "deemed to be on duty," and those officers who are performing those functions and are not being compensated at the rate, if any, in the ordinance are not deemed to be on duty. The statute does not provide that

---

account for those words in their argument to this court, is concerning. In any event, we have decided to attribute the failure to include those words to inattention, and not a violation of the duty of candor every attorney owes to their adversaries and this court. See R.P.C. 3.3(a)(1); see also McKenney ex rel Mckenney, 167 N.J. 359, 371 (2001) (explaining "[l]awyers have an obligation of candor to each other and to the judicial system").

failure to comply with its provisions requires a payment of compensation, and it does not prohibit a volunteer requirement or mandate any compensation.

In fact, the statute undermines plaintiffs' claims because it provides that special police officers may be deemed to be on duty while performing public safety functions on behalf of the City while not receiving compensation. The statute's "compensation" condition for deeming a special police officer to be on duty applies only where compensation "if any" is paid under the applicable ordinance. By employing the "if any" phrase in the statute, the Legislature recognized there could be circumstances where a special police officer would perform public safety functions without any compensation.

We must give effect to the "if any" phrase in the statute. See In re Att'y Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Int. Grps.", 200 N.J. 283, 298 (2009) (explaining a court "must presume that every word in a statute has meaning and is not mere surplusage"); Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26-27 (1990) (explaining a court must "give effect to every word" of a "statute" so as not to construe it "to render [any] part of it superfluous"). And the phrase evinces a clear legislative determination special police officers may perform public safety functions for a municipality

without compensation and, where there is no provision for compensation under the applicable ordinance, the officer shall nonetheless be deemed to be on duty.[9]

In sum, we affirm the dismissal of plaintiffs causes of action as to Ambrose, the award of summary judgment to the remaining defendants, and the denial of plaintiffs' cross-motion for partial summary judgment because all the claims, and all plaintiffs' arguments on appeal to the extent we are able to discern them, are founded on the baseless premise the volunteer requirement in the General Orders is unlawful. Neither plaintiffs' motion papers before the trial court nor their brief on appeal points to any statute, constitutional provision, or decision establishing that is the case.

The asserted causes of action are also fatally flawed for a second but equally dipositive reason; plaintiffs, as independent contractors, agreed to the volunteer requirement as a condition of their appointment and agreement to perform other services for compensation. Plaintiffs assert, indeed insist, they are independent contractors, and defendants do not dispute that contention as a matter of fact or law. An independent contractor is defined as "one who, carrying on an independent business, contracts to do a piece of work according

_____

[9] Plaintiffs do not argue they are entitled to compensation under whatever City ordinance authorizes their appointment and compensation, if any.

to his own methods, and without being subject to the control of his employer as to the means by which the result is accomplished, but only as to the result of work." Est. of Kotsovska, 221 N.J. at 586 (quoting Auletta v. Bergen Ctr. for Child Dev., 338 N.J. Super. 464, 471 (App. Div. 2001)); see also Bahrle v. Exxon Corp., 145 N.J. 144, 157 (1996); Restatement (Second) Agency § 2(3) cmt. (b) (1958) (explaining independent contractors include "all persons who contract to do something for another but are not servants in doing the work undertaken"). By definition, an independent contractor has a contractual relationship with the "employer," Est. of Kotsovska., 221 N.J. at 586, and here the terms of the relationship between the City and the individual plaintiffs include the provisions of the General Orders, including the volunteer requirement.[10]

---

[10] In their brief on appeal, plaintiffs incongruously argue special police officers are independent contractors who do not have a contractual relationship with the City, and they further illogically claim they have a contractual relationship as long as it does not include the volunteer requirement. We do not address the arguments because they are unsupported by competent evidence, and they are otherwise inconsistent with plaintiffs' repeated claim special police officers are independent contractors. Indeed, plaintiffs' complaint asserts defendants breached the covenant of good faith and fair dealing attendant to every contract. See Wade v. Kessler Inst., 172 N.J. 327, 340 (2002) (noting all "contract[s] contain[] an implied covenant of good faith and fair dealing").

A-4168-19

In asserting their causes of action, the individual plaintiffs ignore the separate contractual relationships each shares with the City. They also fail to recognize: they entered into their respective contractual relationships with the City by voluntarily accepting their appointments as special police officers; they have no obligation to apply annually for renewal of their appointments; and they are free to walk away from their appointments as special police officers at any time. Although they voluntarily entered into their respective relationships with the City, the individual plaintiffs, through the guise of creatively pleaded but meritless claims, request that the court rewrite their contracts to eliminate the singular provision—the volunteer requirement—with which they disagree.

"It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn v. Quinn, 225 N.J. 34, 45 (2016). We "enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" In re Cnty. of Atl., 230 N.J. 237, 254 (2017) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). "[W]hen the intent of the parties is plain and the language [of a contract] is clear and unambiguous, a court

must enforce the agreement as written, unless doing so would lead to an absurd result."[11] Quinn, 225 N.J. at 45.

"In general, and subject to other governing law, '[p]arties have a right to contract in any way they see fit.'" E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 199 (App. Div. 2013) (alteration in original) (quoting Triffin v. Bank of Am., 391 N.J. Super. 83, 89 (App. Div. 2007)); see also Seaview Orthopedics ex rel. Fleming v. Nat'l Healthcare Res., Inc., 366 N.J. Super. 501, 510 (App. Div. 2004) ("[P]arties [are] free to contract as they deem[] appropriate, and courts will not rewrite contracts to make better deals for parties than they freely and voluntarily chose to make for themselves."). We therefore discern no basis, because plaintiffs offer none, allowing this court to rewrite or modify the terms of each special police officer's appointment to eliminate their clearly stated obligation to comply with the volunteer requirement. Again, the

---

[11] We recognize courts are not bound to enforce contracts that are contrary to public policy. Sacks Realty Co., Inc. v. Shore, 317 N.J. Super. 258, 269 (App. Div. 1998). "[S]ources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." Vitale v. Schering-Plough Corp., 447 N.J. Super. 98, 112 (App. Div. 2016) (alteration in original) (quoting Hitesman v. Bridgeway Inc., 430 N.J. Super. 198, 218 (App. Div. 2013)). In its brief on appeal, plaintiffs argue in conclusory fashion the volunteer requirement is contrary to public policy but, as noted, they fail to identify any statutory, administrative, or judicial sources of a public policy barring an independent contractor from agreeing to provide volunteer services as a condition of his or her retention.

special police officers are not compelled to provide the voluntary services; as independent contractors, they agree to perform those services without compensation as a condition of their voluntary acceptance of their appointments as special police officers subject to the requirements of the General Orders.

Plaintiffs also claim the volunteer requirement violates N.J.S.A. 40A:9-6, which provides:

> Any person who has held or who may hereafter hold, de facto, any office or position in the public service of any county or municipality, and who has or shall have performed the duties thereof, shall be entitled to the emoluments and compensation appropriate to such office or position for the time in fact so held and may recover therefor in any court of competent jurisdiction, notwithstanding any refusal or failure of any other person or officer to approve or authorize the payment of said emoluments and compensation.

Plaintiffs assert they are "de facto" police officers during the performance of their service pursuant to the volunteer requirement and, as a result, they are entitled to "compensation appropriate" for regular police officers during the performance of those duties. To establish an individual is a "de facto" police officer entitled to the benefits under N.J.S.A. 40A:9-6, an individual must establish he or she "held the position," and did "not just . . . assume[] duties" of the position. Thigpen v. City of E. Orange, 408 N.J. Super. 331, 338 (App. Div. 2009).

A-4168-19

Plaintiffs, as special police officers, never hold the position of a police officer as a matter of law. "[S]pecial police are not the equivalent of regular police officers who serve on a full-time basis throughout the year and from year to year. The special has a more limited role, one restricted in time or function or both." Belmar Policemen's Benevolent Assoc. of Local #50 v. Borough of Belmar, 89 N.J. 255, 262 (1982). Special police officers are "not . . . members of the police force of the local unit," N.J.S.A. 40A:14-146.14(a), and their identification cards and badges must "clearly distinguish" them from "members of any regular and permanent . . . police department," N.J.S.A. 40A:14-146.6. Thus, special police officers do not hold the office or position of a regular police officer such that they are de facto police officers under N.J.S.A. 40:9-6, see Thigpen, 408 N.J. Super. at 336, and therefore, during their performance of duties pursuant to the volunteer requirement, they are not entitled to "compensation" that would otherwise be due regular police officers performing similar services.

In sum, we affirm the court's dismissal of plaintiffs' claims as to Ambrose and the summary judgment award to the remaining defendants, as well as the denial of plaintiffs' motion for partial summary judgment, because plaintiffs fail

37

to demonstrate the singular basis upon which all the claims are based—that the volunteer requirement is unlawful—has any support in the law.

We find it unnecessary to directly address each of plaintiffs' remaining arguments—all of which we have considered and almost all of which constitute nothing more a recasting of their claim the volunteer requirement is unlawful. [12]

---

[12] We find plaintiffs arguments concerning qualified immunity are without sufficient merit to warrant discussion in a written opinion. We do not address the issue, and we offer no opinion concerning it, because our affirmance of the dismissal of, and summary judgment on, plaintiffs' causes of action renders a determination concerning qualified immunity unnecessary.

It is unnecessary to detail the myriad of statutes and the few cases plaintiffs' simply list as supporting a finding the volunteer requirement violates public policy or the law. Plaintiff's listing of the authorities is unaccompanied by any analysis, discussion, explanation, or argument explaining the manner in which the authorities support or define a public policy applicable here. It is not the role of this court to forage through a list of authorities to determine if and how they might apply to the circumstances presented or how they might support a parties' position. A failure to offer legal argument in support of a claim on appeal constitutes an abandonment of the issue. Drinker Biddle & Reath LLP, 421 N.J. Super. at 496 n.5.

Additionally, the authorities cited do not, for various reasons, provide support for plaintiffs' putative claim the volunteer requirement is, in some manner, unlawful or violative of public policy where an independent contractor freely agrees to comply with it by accepting an appointment as a special police officer. We highlight some of the listed authorities for illustrative purposes. For example, plaintiffs rely on Rosen v. Smith Barney, Inc., 393 N.J. Super. 578 (App. Div. 2007), for the proposition it is against public policy for an employer to divert an employee's wages. Rosen is inapposite here because it interpreted the New Jersey Wage and Hour Law, which applies to an employer's obligations to properly pay an employee's wages, id. at 585-86, and the statute does not apply to independent contractors, Hargrove, 220 N.J. at 302-03. Similarly,

These remaining arguments are without sufficient merit to warrant any further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

plaintiffs cite to Roman v. Bergen Logistics, LLC, 456 N.J. Super. 157 (App. Div. 2018), for the proposition that an employer may not divert an employee's wages, but the diversion of wages is not an issue in that case.

Plaintiffs also cites a series of criminal statutes, claiming they are sources of public policy requiring the invalidation of the volunteer requirement.  The statutes are uniformly inapplicable here.  For example, plaintiffs rely on N.J.S.A. 2C:20-4, which defines the offense of theft by deception, but they do not allege or present any evidence defendants committed any acts of deception. See generally State v. Krueger, 241 N.J. Super. 244, 249 (App. Div. 1990) ("Theft by deception occurs where one obtains the property of another by purposely creating a false impression" (quoting State v. Talley, 184 N.J. Super. 167, 169 (App. Div. 1982), rev'd on other grounds 94 N.J. 385, 388 (1983))).

Plaintiffs allege only they are independent contractors whose contract with the City includes the volunteer requirement.  Plaintiffs' reliance on N.J.S.A. 2C:20-7, receiving stolen property, and N.J.S.A. 2C:20-8, theft of services, is also without merit.  Those statutes do not apply because they require theft of the property or services of another.  Plaintiffs apparently contend that the property that was unlawfully taken are the wages to which they would otherwise be entitled if they did not volunteer to provide them without compensation.  The claim ignores that as independent contractors who accept appointments as special police officers from the City, special police officers freely agree to twenty hours of services annually without compensation.  Thus, they have no entitlement to, or a property interest in, the putative wages they claim are the subject of the alleged thefts under the criminal statutes they rely on in support of their public policy claim.  And there is no theft of their services because they agreed to provide them without compensation.